(No. 30342.

FRED C. BERGESON *et al.*, Appellants, *vs.* SAMUEL A. MUL-
LINIX *et al.*, Appellees.

*Opinion filed March 18, 1948.*

OAKLEAF & CHURCHILL, of Moline, HUBER, REIDY & KATZ, of Rock Island, and WERNER W. SCHROEDER, of Chicago, (CYRUS CHURCHILL, and ISADOR I. KATZ, of counsel,) for appellants.

SOLLO, GRAHAM & CALIFF, of Moline, and EAGLE & EAGLE, of Rock Island, (ROBERT G. GRAHAM, of counsel,) for appellee Samuel A. Mullinix.

Mr. JUSTICE GUNN delivered the opinion of the court:

Fred C. Bergeson, *et al.*, filed an election contest in the circuit court of Rock Island County against Samuel A. Mullinix, county clerk of Rock Island County, who was certified as being re-elected at the regular November election held November 5, 1946, and against William H. Fritz, a candidate at said election, who withdrew prior to election day. The plaintiffs are members of the Rock Island Republican central committee and qualified electors, and file the contest under section 19 of article 23 of the Election Code.

The facts in the case are somewhat unusual. Fritz was the duly and regularly nominated candidate for county clerk on the Republican ticket, and Mullinix the duly and regularly nominated candidate for county clerk on the Democratic ticket. Three days before the election Fritz withdrew his name as a candidate, and requested that his name not be printed on the official ballot. His name was withdrawn by the county clerk by locking the levers on the voting machines that would cast a vote in his favor at the election. The Republican county central committee did not, or could not, nominate a candidate in his place. In the election following Mullinix received the greater number of votes, although in the territory where the name of Fritz was not locked off from the ticket Fritz received a majority. The total vote certified and canvassed was 16,530 for Mullinix and 6413 for Fritz.

The charges in the petition are: (1) fraud, in that the withdrawal of the name of Fritz at the time and manner was the result of a conspiracy between Fritz and Mullinix; (2) that the county clerk had no authority to accept and file the withdrawal of Fritz at the time he did; and (3) that the action of Mullinix as county clerk in blocking the name of Fritz on the voting machines so that a ballot could not be cast in his favor constituted a mutilation of the ballot and rendered it void, so as to require all such ballots to be thrown out and not counted for any candidate.

The relief prayed for was: (a) that the court would enter an order annulling the general election held November 5, 1946, in so far as relates to the office of county clerk; (b) that the court would enter an order that the general election held November 5, 1946, be declared null and void as to said office, according to sections 26 and 29 of article 23 of the Election Code; and as an alternative plaintiffs prayed that the court would enter an order that all of the ballots cast and registered on voting machines in the election districts where the levers opposite the name of the Republican candidate for county clerk were locked on election day, be discarded and treated as illegal ballots, and find that the only lawful ballots cast at said general election for the office of county clerk were those registered on voting machines where none of the levers were locked, and declare William H. Fritz as duly elected to the office of county clerk of Rock Island County.

The answer of Mullinix denies all of the acts claimed to constitute fraud; admits the facts as to the withdrawal of Fritz; the locking of the levers on the voting machines; and says his actions were lawful, and were done after consulting the proper authorities, and denies petitioners are entitled to relief. The answer of Fritz says his withdrawal was in good faith, and neither admits nor denies the other allegations in the petition.

After a hearing the trial court entered an order in the

nature of a final decree denying the relief prayed for in the petition, and declaring Mullinix to be duly elected to the office of county clerk.

The facts are comparatively simple. November 2, 1946, William H. Fritz mailed to the county clerk a statement or request for withdrawal, substantially as follows:

"November 1, 1946

Samuel A. Mullinix,
County Clerk,
Court House,
Rock Island, Illinois.
Dear Mr. Mullinix:

Because of personal reasons I have decided to withdraw as a candidate for County Clerk on the Republican ticket at the election November 5.

Please file my withdrawal which I am enclosing herewith.

Thanking you, I am,

Very truly yours,

William H. Fritz."

The enclosure read as follows:

"To S. A. Mullinix,
Clerk of Rock Island County, Illinois.

I wish to withdraw as a candidate for County Clerk on the Republican ticket and request that my name be not printed on the ballot to be voted at the election of November 5, 1946.

Signed this 30th day of October, A.D. 1946.

William H. Fritz."

This was duly acknowledged by a notary public, and both of these documents were received by the county clerk November 2, 1946. The evidence shows he immediately called the State's Attorney of Rock Island County, and sought his advice, and was instructed to accept the withdrawal and block the name of Fritz on the voting machines. He then called the chief clerk in charge of elections in the office of the Secretary of State, who advised Mullinix he could accept the withdrawal. On the same date he wrote a letter to Fred C. Bergeson, advising him of the withdrawal of Fritz, which was not received by Bergeson until Monday, November 4, 1946. However, Bergeson did hear

from Mullinix by telephone of the withdrawal on Sunday afternoon, November 3, 1946. On Saturday and Sunday Mullinix proceeded to block the name of Fritz on the voting machines, so it could not be voted on November 5, but did not unlock or tamper with the voting machines themselves.

The evidence shows Fritz did not tell anyone of his intention to withdraw. He did not notify the Republican party. He testified he received $400 from O. D. Kendall, a Republican, for his withdrawal. He did not know where the money came from, and said the withdrawal was signed at the request of Kendall. Kendall denies this statement. There is no evidence showing that Fritz ever talked with Mullinix, or with anyone in his behalf, about the withdrawal of Fritz. Another candidate for office withdrew his name at the same time, and there is no proof that Mullinix, or this other party, ever talked about the withdrawal of either of the candidates.

Fritz further testified he was a cripple, and could not get around very well. He testified he called Bergeson on the phone the day after the election, and asked him "what do we do next," and Bergeson replied "there was nothing more that could be done," and asked "if I had got mine," and Fritz replied "I got some," and he then asked "if I got it from Mullinix," and Fritz said "no;" and he asked if it came from the office of Mullinix, to which Fritz answered he did not know, and in talking with him he guessed it was all over, and he said "I got mine," and Fritz said "I got some," and then he said "you do not need to expect anything else from the Republican Party." "So far as I know neither Mullinix nor the other candidate had any connection with my withdrawal."

This evidence is wholly insufficient to establish a conspiracy to which Mullinix was a party. The law is well settled that the burden is upon the plaintiff to prove the conspiracy charged in the bill by clear and convincing evi-

dence. (*Tribune Co.* v. *Thompson*, 342 Ill. 503.) Generally, a conspiracy is established largely by circumstantial evidence. A common design is the essence of the charge, and if it be proved that the defendants pursued by their acts the same object, by the same means, one performing one part and one another, a conspiracy may be inferred if the evidence is sufficient. (*Ochs* v. *People*, 124 Ill. 399.) The fraudulent scheme charged in the complaint was that Mullinix, or someone for him, would pay Fritz the sum of $500. Fritz received a sum of money, but there is no proof that Mullinix was in any manner connected with the payment. The complaint charged that Fritz, as a part of the conspiracy, was to withdraw as a candidate, but he says he withdrew because of one Kendall, and not because of Mullinix.

It is further charged that the withdrawal, as a part of the conspiracy, was not filed until it was impossible for the Republican managing committee to fill the vacancy. It was filed very late, but there is no proof, direct or circumstantial, that Mullinix had anything to do with causing this withdrawal. And the last act of the conspiracy charged was that the name of Fritz should be blocked in the voting machines to be used for election. The name was blocked, but the evidence shows it was locked off because of the withdrawal of Fritz, and after the State's Attorney had advised it, and after the latter had been confirmed in his opinion by the chief election clerk in the office of the Secretary of State. In order to connect one with conspiracy there must be something to show an active participation of some sort by the parties charged with the confederation or meeting of the minds to effect the purpose intended. In this case the only acts are the separate acts of Mullinix and of Fritz, without any connection or confederation between them shown by any evidence, direct or circumstantial. The charge of conspiracy is not established by the evidence.

The alternative relief sought was to declare Fritz

elected, although he was not a candidate because he had withdrawn his name, and could not be properly placed upon the ballot. There is nothing in the Election Code that has been called to our attention which requires a person to serve as a public officer if he does not wish to do so. The statute makes provision in the event a candidate should withdraw or decline the nomination, and the general rule seems to be that unless there is some statute requiring him to serve he may have his name removed from the ballot. (*Bordwell* v. *Williams,* 173 Cal. 283, 159 Pac. 869; *State* v. *Hunt,* 53 Wyo. 267, 81 Pac. 2d 883.) The right to hold an election is not inherent, but must be conferred by the constitution or by the statute. (*Scown* v. *Czarnecki,* 264 Ill. 305.) We do have a statute providing for an election. It does not provide that a candidate who has withdrawn his name may be compelled to take an office. It provides that he may withdraw his candidacy, and since in this instance Fritz did withdraw his name, and cannot be compelled to serve, the alternative relief prayed for, that William H. Fritz be declared as duly elected to the office of county clerk of Rock Island County, cannot be granted because it is not authorized by law.

In this case the controversy seems to center largely around the right of Fritz to have his name withdrawn from the ballot at a time when it was practically impossible for the county central committee to fill the vacancy. Appellants claim that the withdrawal could be made only in accordance with section 7 of article 10 of the Election Code, (Ill. Rev. Stat. 1945, chap. 46, par. 10-7,) and is therefore void, leaving Fritz still upon the ticket. Appellees contend that section 7 of article 10 does not apply, but that the withdrawal was properly received under the provisions of section 61 of article 7.

Without reciting all of the provisions and language of the statute, article 7 applies to nominations by political parties, which parties are declared to be those who cast

more than five per cent of the entire vote cast in the State; and in such case section 2 of article 7 provides that they shall be nominated in accordance with the provisions of this article 7. Article 10 provides for making nominations in certain other cases, and expressly provides that no nominations may be made under this article 10 by any established political party casting more than five per cent of the vote. A party polling five per cent or more of the votes comes under the designation of "established political party." We take judicial notice that the members of both the Republican and Democratic parties in 1946 constituted more than five per cent of the voting population, and hence said parties came under the designation of established political parties.

It seems, therefore, that article 7 of the Election Code applies to the nominations for the "established political parties," and article 10 applies to the nominations for minority parties. Each of these articles contains a provision applying to withdrawals. Section 7 of article 10 provides that the candidate may withdraw from any such nomination by request in writing, signed by him, duly acknowledged, and presented to the proper officer within five days after the last day allowed for the filing of the certificates of nomination, or nomination papers. Section 7 of article 10 also provides that after the five-day period allowed for the withdrawal of candidates has expired, any purported withdrawal filed after that time shall be null and void. On the other hand, sections 1 and 2 of article 7 provide that nominations made by parties polling over five per cent of the entire vote cast in the State are governed by article 7, and not otherwise. Section 61 of article 7 provides that in case a candidate, who has been nominated under the provision "of this Article 7 shall die * * * or decline the nomination, or should the nomination for any other reason become vacant," such vacancy may be filled by the managing committee of the majority

party. In section 61 of article 7 there is no time fixed within which the candidate must decline nomination, nor is there any time limitation as to the number of days it must be filed before election day. The only provision made for the situation in case of there being no candidate through either death or declination, is the provision giving authority to the managing committee of such major political party to nominate a new person.

The statute provides: (1) for making nominations for candidates for major political parties; and (2) for making nominations of candidates for minority parties, and each article provides the manner in which a vacancy or withdrawal of a candidate may be filled. The statute seems to recognize that the major parties, having party organizations, provide means by which they can rapidly and efficiently fill a vacancy, in case of death or withdrawal of a candidate. The minority parties, whose candidates are placed upon the ticket by petition, nominating conventions, or otherwise, do not have the fixed organization that the statute has seen fit to recognize, and therefore there is provided a different method for filling vacancies.

It is urged by appellants that section 61 of article 7 is a continuation of section 8 of the Ballot Act of 1891, and that previous to the adoption of the Election Code this court had held that section 8 had not been repealed by the Primary Act. It is true that in *People ex rel. Schnackenberg* v. *Czarnecki,* 256 Ill. 320, and *People ex rel. McCormick* v. *Czarnecki,* 266 Ill. 372, we held that section 8 of the Ballot Act had not been repealed by the adoption of the particular Primary Act then being considered. It is, of course, a matter of history that a number of primary acts were adopted by the legislature, and held invalid by the Supreme Court for different reasons. The first act was passed in 1905, and the last in 1927. In each of these Primary acts there was a provision therein providing for the filling by the county central committee or the State

central committee, as the case might be, of vacancies caused by death or otherwise. It was following the Primary Act of 1909-1910, that the *Czarnecki cases* were announced. However, at the session of 1927, when the last Primary Election Act was enacted, the Ballot Act was at the same session amended, so that there was a provision in the latter act that the Ballot Act would not apply to any political party which at the last preceding election had polled two per cent or more of the entire vote voting in such election. The effect thereof was to change the law as announced in the *Czarnecki cases,* so that the provisions of such Ballot Act applied only to political parties casting less than two per cent of the vote.

The Election Code was enacted in 1943, and at the time of its enactment there was still incorporated in sections 3, 4 and 5 of the Ballot Act, (Ill. Rev. Stat. 1941, chap. 46, pars. 290, 291 and 292,) the same provisions contained in the 1927 amendments, except that the Ballot Act did not apply to political parties which had polled five per cent or more of the entire vote cast at the preceding election. This was the provision in the Ballot Act when the Election Code was adopted, and would seem to effectually negative appellants' position that section 61 of article 7 does not apply to major political parties by reason of anything contained in the Ballot Act.

A great deal has been said about the construction of statutes, but construction is necessary only where the statute is ambiguous. In this case we think the statute is clear, and needs no further construction than to read the provisions thereof. *People* v. *Lund,* 382 Ill. 213.

Section 7 of article 10 provides for the filling of vacancies in the case of minority party candidates, and section 61 of article 7 provides a means for filling vacancies or withdrawals in the case of candidates of majority parties who are nominated under this article 7.

It is contended, however, that there is a large question

of public policy, and that if the law is as construed by the circuit court it offers an opportunity for fraud and trickery in elections, which was not contemplated. The public policy of the State is found in the public laws, statutes and in the decisions of this court. (*Groome* v. *Freyn Engineering Co.* 374 Ill. 113; *Ziegler* v. *Illinois Trust and Savings Bank,* 245 Ill. 180.) And, since there can be no election without statutory warrant of law, (*People ex rel. Travis,* v. *Rogier,* 326 Ill. 310,) it would seem that we are bound by the written provision of the statute and not by public policy asserted to exist but which is not manifested in a manner that has been recognized by the courts. We are satisfied that the withdrawal of candidate Fritz from the nomination for the office of county clerk was properly made under the provisions of the statute.

It is argued at great length that a fraud was committed upon the people, and that the election should be invalidated. It seems to be true that Fritz disregarded the moral obligation to be the candidate at the election, although he had been nominated by the Republican party. And it also appears that he withdrew from that nomination in consideration of being paid by someone, all of which is highly discreditable. We do not see, however, how it affects the validity of his withdrawal, provided it was not the result of a conspiracy by his opponent. We could with equal propriety say that if the contention of appellants were sustained it would be within the power of a venal candidate, by withdrawing, to render an entire election void by the fraud of one person alone. If there is a defect in the law it is for the legislature to correct, and not the courts.

Appellants also contend that after Fritz had filed his withdrawal the county clerk had no right to take his name from the ballots by locking the levers on the voting machines opposite his name, because such action amounted to a judicial act, and was therefore void. It is admitted that the county clerk has the right to perform ministerial acts, and

in fact, both parties agree that election officials, whether judges, clerk, or county clerk, can perform only the duties specified for them by the statute. Under the statute the county clerk has charge of the printing of the ballots at the election, (article 16, sec. 5,) and is charged with the duty of delivering the ballots to each polling place not less than twelve hours before the election, and if, before the day of the election, ballots furnished any precinct are lost or destroyed, upon the proper application he may deliver additional ballots. Section 3 of article 16 also provides that the ballots are to contain *only* the names of the candidates to be voted for, and no other. Section 5 of article 16 provides that if any mistakes are discovered they shall be corrected by the county clerk without delay. Under section 11 of article 24, the voting machine provision requires the names of the candidates to be placed upon the ballots. We believe these provisions of the law not only authorize, but require the county clerk, as a ministerial act, to see that the proper name is on the ballot. If the candidate is dead, the ballot should be corrected; if he has withdrawn, he is no longer a candidate, and his name should not be upon the official ballot. While we have not been informed as to how the lock of the lever on the voting machines removed the name of Fritz from the ballot, yet since both parties seem to agree that this is what is effected by so doing, we can see no difference between taking a name off of the official ballot in this manner than by blotting the name off, or furnishing new ballots in cases where the voting machines are not in use.

We have said many times, under different situations, that all of the precise details of carrying out a law do not necessarily need to be set out in the statute. What was said in *People ex rel. Christensen* v. *Board of Education*, 393 Ill. 345, is applicable here. In that case the validity of the School Code, adopted by the legislature in 1945, was questioned in that in certain respects it was indefinite, and

did not precisely point out the details of carrying on school elections. We there said: "The omission in the statute to specify every detail step by step, and action by action, will not render a law vague, indefinite or uncertain from a constitutional standpoint." And further, we said in *Husser* v. *Fouth,* 386 Ill. 188, (quoting from earlier decisions,) "to establish the principle that whatever the legislature shall do, it shall do in every detail, or else it will go undone would, in effect, destroy the government. * * * The true distinction is between the delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made."

The provisions of the law respecting the duties of the county clerk, except where voting machines are used, has been in effect a great many years. Undoubtedly many candidates have withdrawn and had their names removed from the ballot, without a judicial order. In fact, to require an order of the court to take the name of the candidate, who has withdrawn, off of the official ballot, in many cases, because of the time required, would render the provision for withdrawal useless and nugatory. We think the act of locking the name of Fritz from the official ballot was a ministerial act, well within the powers of the county clerk.

It is to be observed in this respect that Fritz is not objecting. Fritz did not desire to be a candidate, and withdrew as such, and he is filing no contest, and we believe if the act of removing his name from the ballot is to be questioned it should be challenged by the candidate and not by electors, who cannot put him in office, because he withdrew, and the only effect of which would be to declare an election utterly void, and leave the office vacant, requiring a new election. We do not believe Fritz was

a proper party to the proceeding. *Holt* v. *Willett*, 252 Ill. 233.

A great deal of discussion is contained in the briefs concerning the relation of the present Election Code to prior laws, and the effect of the adoption of sections of the prior law into the Election Code. We have no means of knowing what the legislature had in mind, other than what has been placed in the law, and the headings under which the same have been placed. There have been many decisions affecting election laws, which would be pertinent to the decision of this case if the law had remained the same as it was at the time the decisions were announced, but it is doubtless because of some of these decisions that the legislature determined to codify the law, and arrange it in such order and sequence that it would be more readily understood in the future.

We recognize the wisdom and research of counsel. In this case they have given us practically all of the cases construing the law, from the early history to the present time. A large number of these cases fail in their purpose, because of the amendment and rearrangement of the Election Code. We are satisfied that the trial judge interpreted it correctly.

There are many points we have not discussed, and many points were discussed which we think irrelevant to the decision in this case, and to the end that it be clear what we have considered, we hold as follows: (1) that Fritz as a candidate of a majority party was entitled to withdraw from the nomination at any time prior to the general election; (2) that his withdrawal was governed by the provisions of section 61 of article 7, and the withdrawal of minority party candidates is governed by section 7 of article 10; (3) that the county clerk has a right in case of the withdrawal of a candidate for the major party, to take his name off of the official ballot, in case of voting machines, by locking the lever opposite the name of such

candidate; (4) that by so locking the name of a candidate, who has withdrawn from the official ballot, there has been no mutilation of the ballot, rendering such ballots illegal and void, and (5) that no fraud was perpetrated by Mullinix, or by anyone with his connivance, or consent, which would invalidate the election to the office of county clerk.

There are many facts ancillary to the issues determinative of this case called to our attention, but which we have not considered, or commented upon, for the obvious reason that they have no relevancy to the proper consideration and decision of this case.

The order, in the nature of a decree, of the circuit court of Rock Island County was correct, and is accordingly affirmed.

*Decree affirmed.*