ALLEN R. DYMEK, Indiv. and as a Custodial Parent of Robert A. Dymek, a Minor, Plaintiff-Appellant, v. ROBERT E. NYQUIST *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 83—1651

Opinion filed September 18, 1984.

Edward L. Osowski, of Chicago, for appellant.

Maurice J. Garvey, William J. Rogers, and Thomas E. Patterson, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellees.

JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Allen R. Dymek, appeals from the entry of an order dismissing his complaint at law with prejudice pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615).[1]

On March 9, 1982, plaintiff instituted the present action against defendant Robert E. Nyquist, a psychiatrist, and defendant Retha J. Dymek,[2] plaintiff's former wife. Essentially, plaintiff's complaint alleged that Retha took their son, Robert, a nine-year-old minor over whom plaintiff had been awarded custody, to see Dr. Nyquist for a period of one year for purposes of psychiatric treatment. Robert allegedly underwent psychotherapy without the knowledge or consent of plaintiff. Subsequent thereto, Dr. Nyquist testified on behalf of Retha at a hearing held in connection with her petition for change of custody.

By virtue of these allegations, plaintiff averred that he had suffered "severe emotional stress and disturbance to [his] mental tranquility" as a result of Dr. Nyquist's conduct (count I); that Dr. Nyquist

---

[1]Formerly known as Ill. Rev. Stat. 1979, ch. 110, par. 45.

[2]Defendant Retha J. Dymek failed to file a brief with this court in accordance with Supreme Court Rule 343 (87 Ill. 2d R. 343). The trial court's judgment as to this particular appellee is considered on the merits pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

had breached the fiduciary duty of trust and confidence owed to Robert (count II); that Dr. Nyquist and Retha conspired "to gain physical and mental custody and control of [Robert] \*\*\* and to maliciously, unlawfully and wrongfully injure the plaintiff in his mental and emotional well-being" (count III); that Dr. Nyquist and Retha deprived, alienated and destroyed the affection of Robert toward plaintiff (count IV); and that Dr. Nyquist had engaged in malpractice through unauthorized treatment as well as unconsented revelation of privileged psychiatric information (count V).

Count IV, originally premised on alienation of affections, was amended by leave of court on January 25, 1983, so that the words "to alienate and destroy the affection" were replaced by the words "to injure and destroy the society and companionship." On that same day, January 25, pursuant to Dr. Nyquist's motion, the trial court entered an order dismissing counts II, IV, and V of the complaint, and striking counts I and III with leave to amend. Plaintiff, however, elected to stand on his pleadings and subsequently filed a motion for rehearing and to vacate the order of January 25, 1983. This motion was denied, and plaintiff's complaint was thereupon dismissed with prejudice on June 6, 1983.[3] It is the propriety of this dispositive order which plaintiff now contests on appeal.

I

The sole issue presented for review is whether the lower court properly dismissed plaintiff's complaint with prejudice.

COUNT I

■ In order to state a cause of action for intentional infliction of emotional distress, facts must be alleged which establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant's conduct, if alleged to have been "reckless," was such that the defendant knew severe emotional distress would be certain or substantially certain to result. *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765.

Regarding the first element, the nature of defendant's conduct, liability exists only where such conduct has been " 'so outrageous in character, and so extreme in degree, as to go beyond all possible

---

[3]The dismissal order of June 6, 1983, indicates that Retha had, at some indeterminate point, joined in on Dr. Nyquist's motion to strike and dismiss plaintiff's complaint.

bounds of decency ***.' " (*Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 745-46, 431 N.E.2d 1175, quoting Restatement (Second) of Torts sec. 46, comment d (1965).) With respect to the second element, the severity of plaintiff's distress, " '[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity.' " (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, quoting Restatement (Second) of Torts sec. 46, comment j (1965).) Pertaining to the recklessness of defendant's conduct, "liability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it." *Plocar v. Dunkin' Donuts of America, Inc.* (1981), 103 Ill. App. 3d 740, 746, citing Restatement (Second) of Torts sec. 46, comment i (1965), and Prosser, Torts sec. 12, at 60 (4th ed. 1971).

In order to determine whether a plaintiff has stated a cause of action for intentional infliction of emotional distress, a reviewing court must accept as true the allegations contained in the complaint. (*Witkowski v. St. Anne's Hospital of Chicago, Inc.* (1983), 113 Ill. App. 3d 745, 752, 447 N.E.2d 1016, *appeal denied*, 96 Ill. 2d 552.) Here, plaintiff's complaint charges that Dr. Nyquist surreptitiously performed psychotherapy on Robert twice a month for a period of one year. By virtue of this course of action, it is claimed that Dr. Nyquist intentionally or recklessly caused severe emotional distress to plaintiff's mental tranquility.

It is our opinion that the psychiatrist's conduct, performed at the request of Robert's mother, cannot be characterized as so outrageous, so atrocious and so utterly intolerable that a person of ordinary sensibilities could not reasonably be expected to endure it. In support of a contrary conclusion, plaintiff cites and strongly relies on *Burchfield v. Regents of the University of Colorado* (D. Colo. 1981), 516 F. Supp. 1301. Such reliance, however, is seriously misplaced since *Burchfield* did not concern the tort of intentional infliction of emotional distress.

In addition, we note that plaintiff's complaint is absolutely devoid of any allegation that the purported psychiatric treatment was in any way detrimental to Robert's mental or physical state of health. In fact, there is no claim that Dr. Nyquist's care was unnecessary. In view of these deficiencies, we simply cannot conclude that the psychiatrist's actions reached such an extreme level of outrageousness and severity "beyond all bounds of decency" so as to give rise to a cause of action for intentional infliction of emotional distress. Count I of the

complaint, therefore, was properly dismissed.

COUNT II

The trial court's dismissal of count II was premised on the authority of *McDonald's Corp. v. Levine* (1982), 108 Ill. App. 3d 732, 439 N.E.2d 475, *appeal denied* (1983), 92 Ill. 2d 575. Plaintiff contends that *McDonald's*, which held only (as pertinent to this case) that there exists no affirmative, independent cause of action for a tortious interference with the attorney-client privilege, provides no basis for such dismissal. (*McDonald's Corp. v. Levine* (1982), 108 Ill. App. 3d 732, 744.) The present case, however, concerns the psychiatrist-patient privilege—the invasion of which may constitute a recognized cause of action in Illinois. See *Geisberger v. Willuhn* (1979), 72 Ill. App. 3d 435, 438, 390 N.E.2d 945 ("The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of 'personal' information, *e.g.*, information relating to the patient's *mental* or physical condition ***." (Emphasis added.))

Nonetheless, even if the lower court had, in fact, applied irrelevant case law in reaching its decision, "the judgment may be sustained upon any ground warranted, *** regardless of whether the reason given by the trial court was correct." *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

A

Plaintiff asserts that Dr. Nyquist was in breach of his fiduciary duty through his unauthorized revelation of confidential information, *i.e.*, by providing the results of Robert's psychiatric evaluations to his mother, Retha, and her counsel.

It is settled law in Illinois that where a person makes statements to a therapist during a professional consultation, those statements are privileged. (*In re Marriage of Semmler* (1980), 90 Ill. App. 3d 649, 654, 413 N.E.2d 502; see also *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 599-600, 445 N.E.2d 6.) Indeed, the Mental Health and Development Disabilities Confidentiality Act (hereinafter the Act) (Ill. Rev. Stat. 1983, ch. 91½, par. 801 *et seq.*) provides that "in any civil, *** proceeding, *** a recipient, *** has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." (Ill. Rev. Stat. 1983, ch. 91½, par. 810.) Section 4 of the Act, however, provides in pertinent part that: "(a) The following persons shall be entitled, upon request, to inspect and copy a recipient's record or any part thereof: (1) the parent or guardian of a recipient who is under 12 years of age; ***." Ill. Rev.

Stat. 1983, ch. 91½, par. 804.

A recipient is defined in the Act as a person who has received mental health services (Ill. Rev. Stat. 1983, ch. 91½, par. 802(6)); mental health services include, but are not limited to, examination, diagnosis, evaluation and treatment (Ill. Rev. Stat. 1983, ch. 91½, par. 802(3)); a record is defined in the Act as any record "kept by a therapist" in the course of providing mental health services to a recipient (Ill. Rev. Stat. 1983, ch. 91½, par. 80—2(7)); and a therapist, as used in the Act, includes psychiatrists (Ill. Rev. Stat. 1983, ch. 91½, par. 802(9)).

■ At the time the instant action was commenced, Robert was under 12 years of age. Although Retha was not in custody of Robert at the time of the alleged psychotherapy, the fact still remains that she was a parent of Robert. Since the Act makes absolutely no distinction between a custodial or a noncustodial parent, we hold that Retha was entitled by statute, upon her request, to the results of Robert's psychiatric evaluations. We think common sense suggests this humane position. Every parent, be he custodial or noncustodial, should be entitled to receive a copy of such a report unless it can be demonstrated a parent has no interest in the health, welfare or well-being of a child.

B

■ We next consider plaintiff's claim that Dr. Nyquist's treatment of Robert was, in fact, unauthorized by the Illinois Marriage and Dissolution of Marriage Act (hereinafter IMDMA) (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*). Specifically, plaintiff maintains that the following provision of the IMDMA prohibited the psychotherapy performed by Dr. Nyquist:

"Judicial Supervision. (1) Except as otherwise agreed by the parties in writing at the time of the custody judgment, the custodian may determine the child's upbringing, including but not limited to, his education, *health care* and religious training, unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would endanger the child's physical health or significantly impair his emotional development." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 40, par. 608(a).

Our research has failed to disclose a single Illinois case wherein a private cause of action against a third party to a custody proceeding has ever been implied from section 608(a) of the IMDMA. Nonetheless, it is clear that "[s]ection 608(a) *** speaks in terms of a single

custodian with substantial authority." (*In re Marriage of Manuele* (1982), 107 Ill. App. 3d 1090, 1094, 438 N.E.2d 691, *appeal denied* (1982), 92 Ill. 2d 568.) From a plain reading of the statutory language, it is also clear that the parties may agree "in writing at the time of the custody judgment" that a noncustodial parent retain specified rights to determine, or to participate in the determination of, matters concerning, *inter alia*, the minor child's health care. (*Cf. In re Marriage of Manuele* (1982), 107 Ill. App. 3d 1090, 1094.) Regarding the case at bar, the record and briefs before this court are devoid of any indication that such a written agreement was, in fact, entered into at the time of the custody judgment.

Furthermore, under section 608(a), whenever circumstances arise wherein the custodian's authority would endanger the child's physical health or significantly impair his emotional development, the noncustodial parent, upon motion, can seek "specific limitations of such authority. We note, however, that there is no averment here of any circumstances regarding potential endangerment to Robert's physical health, or significant impairment of his emotional development, by virtue of the custodial authority vested in plaintiff.

In view of the apparent secrecy of the psychiatric sessions involved herein, coupled with the fact that Dr. Nyquist testified as an expert witness on behalf of Retha at the hearing held in connection with her petition for change of custody, it is reasonable to conclude that the psychiatrist knew Retha as the noncustodial parent of Robert. There is no allegation here of an emergency situation, nor is there any allegation that Retha was precluded from seeking court permission for Dr. Nyquist's treatment. The psychiatrist, therefore, simply had no authority to subject a young child to psychotherapy—twice a month for a period of one year—without lawful consent of either plaintiff, as Robert's custodial parent, or the court having authority under section 608(a).

In essence, Dr. Nyquist's actions over the one-year period of psychotherapy constituted a most severe interference with plaintiff's custodial prerogatives and duties in the area of his minor child's health care. Since neither the written agreement nor the exigent circumstances referred to in section 608(a) are present in this case, we are of the opinion that the lower court erred in refusing to recognize a cause of action for Dr. Nyquist's alleged surreptitious, unauthorized psychiatric treatment of plaintiff's son.

Count III
    Count III of plaintiff's complaint avers that Dr. Nyquist conspired

"to gain physical and mental custody and control of [Robert] \*\*\* without regard to the physical and mental well-being of said minor child, and to maliciously, unlawfully, and wrongfully injure the plaintiff in his mental and emotional well-being."

■ A civil conspiracy giving rise to a cause of action in Illinois involves a combination of two or more persons for the purpose of accomplishing, through concerted action, either an illegal object or a legal object by an illegal means. (*Daley v. G'Sell* (1981), 102 Ill. App. 3d 548, 553, 430 N.E.2d 556; *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 738, 365 N.E.2d 724.) The basis of the conspiracy is not the "combination"; rather, it is the wrongful act alleged to have been done in pursuance of the agreement that may result in liability. (*Daley v. G'Sell* (1981), 102 Ill. App. 3d 548, 553; *Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 1062-63, 403 N.E.2d 555, *appeal denied* (1980), 81 Ill. 2d 591.) The burden of proof in such cases always lies with the plaintiff to prove the conspiracy by clear and convincing evidence. *Bergeson v. Mullinix* (1948), 399 Ill. 470, 474-75, 78 N.E.2d 297; *Alm v. General Telephone Co.* (1975), 27 Ill. App. 3d 876, 880, 327 N.E.2d 523, *appeal denied* (1975), 60 Ill. 2d 595.

In our opinion, the allegations in count III are adequate to state a cause of action for a civil conspiracy to violate, if not vitiate, plaintiff's court-decreed custodial rights in his child. Sufficient facts are set forth in the complaint at law so as to make it appear that the alleged wrongful acts of defendants did, indeed, result from a concerted action. This holds especially true in view of the fact, which we must accept as a verity (see *Morrow v. L.A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1096), that Dr. Nyquist testified as an expert witness on behalf of Retha at the hearing held in connection with her petition for change of custody.

Without question, a conspiracy may be inferred from the circumstances peculiar to a specific case if the evidence is sufficient. (*Bergeson v. Mullinix* (1948), 399 Ill. 470, 475; *Lurie v. Village of Skokie* (1978), 64 Ill. App. 3d 217, 229, 380 N.E.2d 1120.) Plaintiff here has alleged the ultimate facts, albeit inferential, necessary to support a legally cognizable claim for civil conspiracy. We stress that "[w]hile ultimate facts necessary to support an action must be alleged, the pleader need not set forth evidence which very well may be derived from discovery subsequent to the filing of the complaint." (*Ingram v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 456, 459, 438 N.E.2d 1194, *appeal denied* (1982), 92 Ill. 2d 568, citing *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 430 N.E.2d 1005.) In addition, it is important to bear in mind that al-

though a court-decreed custody change is certainly a legal object, plaintiff is nevertheless entitled to his day in court in order that he may attempt to prove, by clear and convincing evidence, a concerted action on the part of defendants to effectuate such a change through an illegal means.

"In sum, the pleadings are to be liberally construed with the view of doing substantial justice between the parties." (*Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 710, 425 N.E.2d 1174.) Hence, it is our conclusion that the lower court erred in dismissing count III of plaintiff's complaint.

COUNT IV

■■ Count IV of plaintiff's complaint at law, which was amended on January 25, 1983, claimed that defendants conspired to separate Robert from plaintiff "so as to deprive the plaintiff of the relationship, and to injure and destroy the society and companionship of the child towards the said plaintiff ***." It is plaintiff's contention that a cause of action for the loss of a minor child's society and companionship can be maintained by a parent in Illinois. We agree.

On July 5, 1984, the Illinois Supreme Court issued an opinion which reversed the trend of courts in this State to deny recovery for parental loss of a minor child's society and companionship. This trend had been recently evinced in the case of *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 445 N.E.2d 485, *aff'd and remanded with directions,* (1984), 102 Ill. 2d 505, wherein the appellate court held that because there is a qualitative difference between the "society" of a spouse and that of a child, there existed no basis for including within the damage provisions of the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, par. 1 *et seq.*) the loss of a child's society. *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 390.

Our supreme court disagreed, however, holding that since recovery has been allowed in cases involving the loss of a spouse (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 442 N.E.2d 163; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157) and a parent (*Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352), "it would be anomalous to now deny parents this form of recovery." (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 515.) Although *Bullard* involved a wrongful death claim (whereas the conduct here is alleged to have nonfatal consequences, *i.e.*, "brainwashing"), the fact remains that the supreme court specifically concluded that "parents are *entitled* to a presumption of pecuniary injury in the loss of a child's society, ***. Defendants may rebut the presumption by presenting evidence that a parent and child were es-

tranged." (Emphasis added.) *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 517.

In dismissing count IV of the instant complaint, the court below specifically relied on *Koskela v. Martin* (1980), 91 Ill. App. 3d 568, 414 N.E.2d 1148, *appeal denied* (1981), 83 Ill. 2d 570. In *Koskela*, the appellate court affirmed the dismissal of an autistic child's action for the loss of consortium, companionship and society of her injured father. However, in view of the position recently taken by the Illinois Supreme Court in *Bullard*, and accepting all of the facts properly pleaded in count IV as true (including the averment that prior to the psychotherapy, "plaintiff and his son lived happily together in a harmonious family relationship"), it is our opinion that we should now recognize a cause of action for parental loss of a minor child's society and companionship.

Furthermore, we note that contrary to Dr. Nyquist's assertion, the present case does not concern the alienation of a child's affections. Rather, as explained earlier, plaintiff's complaint was amended by leave of court so that the words "to alienate and destroy the affection" were replaced by the words "to injure and destroy the society and companionship."

COUNT V

■ Plaintiff's final claim reiterates the breach of confidentiality allegations contained in count II, and then goes on to declare that Dr. Nyquist's treatment of Robert was, in fact, unauthorized by the IMDMA (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*).

First, as we have previously indicated, Retha was entitled by Illinois statutory law to the results of her son's psychiatric evaluations. Dr. Nyquist's release of this information thus did not constitute a breach of the psychiatrist's fiduciary obligation of confidentiality.

Second, we note that count V, which "sounds in the tort of simple malpractice," is devoid of the requisite elements necessary to establish such a claim, *i.e.*, that the psychiatrist owed Robert a duty, which was breached or not performed, proximately causing injury, and resulting in damages. (See *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 813, 458 N.E.2d 1120.) While it is true that Dr. Nyquist's psychiatric treatment of Robert was, indeed, allegedly surreptitious and unauthorized, we believe that in light of the foregoing deficiencies, such a circumstance, without more, simply cannot amount to actionable malpractice. The trial court thus correctly dismissed count V of plaintiff's complaint.

CONCLUSION

A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle a plaintiff to recovery. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61.) We cannot say, as a matter of law, that there is no evidence under the instant allegations of fact which could prove unauthorized psychiatric treatment under section 608(a) of the IMDMA, a civil conspiracy, and parental loss of a minor child's society and companionship. Rather, counts II, III and IV of plaintiff's complaint set forth sufficient factual allegations upon which to go forward with a trial on the merits.

For the reasons set out herein, that portion of the judgment of the circuit court of Cook County dismissing counts I and V of plaintiff's complaint is affirmed. That portion dismissing counts II, III and IV is reversed, and the cause is remanded for further proceedings.

Affirmed in part, reversed in part and remanded.

HARTMAN, P.J., and STAMOS, J., concur.