228 N.J. Super. 17 (1988)
548 A.2d 528
LORENZO DAVIS, AN INFANT BY HIS GUARDIAN AD LITEM ROSA LEE TERRY AND ROSA LEE TERRY, INDIVIDUALLY PLAINTIFFS,
v.
ELIZABETH GENERAL MEDICAL CENTER, EMIL PISERCHIA, M.D., AND OZZIE ALLEN, R.N., DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided July 22, 1988.
*18 Robert J. Cardonsky, for plaintiff (Forman, Forman, Cardonsky & Andril, attorneys).
Melinda Fabrikant, for defendants Elizabeth General Medical Center and Emil Piserchia, M.D. (McDonough, Murray & Korn, attorneys).
Debra Pandos, for defendant Ozzie Allen, R.N. (Hurley & Vasios, attorneys).
MENZA, J.S.C.
The question in this case is whether the parent of a severely and permanently disabled child should be permitted to assert a cause of action for the loss of her child's companionship and society during his minority.
Plaintiff, Lorenzo Davis, suffered severe permanent brain damage which rendered him incompetent as a result of medical negligence that occurred on August 9, 1984. He is now in a semi-comatose state. He cannot speak or otherwise communicate. He responds to noise, feel, voice and touch, and smiles when he is content. There is very little chance that he will ever again be normal. He will most likely require institutionalization, with constant care, for the rest of his life.
*19 There is no need for this court to recite at great length the relationship between Lorenzo and his mother. Suffice it to say that it was a close and loving one.
A parent's per quod claim has its roots in the common law.
Since the father was, under the common rule, entitled to the services of his child, he was entitled to recover for a loss of services or earning capacity not only when the child was enticed away or seduced, but also when the child was tortiously injured. And since the father was obliged to provide medical attention to the child, he was likewise entitled to recover against the tort-feasor for the child's medical expenses. [Prosser and Keeton, Law of Torts (5 ed. 1984), § 125 at 934]
N.J.S.A. 9:1-1 mirrors the common law:
The father and mother of a minor child are equally entitled to its services and earnings....
The parents jointly may maintain an action for the loss of wages or services of their minor child when such loss is occasioned by an injury, wrongfully or negligently inflicted upon such child.
There are numerous New Jersey cases which permit a parent to recover for expenses incurred on behalf of a child and for the loss of a child's services and earnings. See, e.g., Mathias v. Luke, 37 N.J. Super. 241 (App.Div. 1955). There is only one case, a Law Division case, which has specifically addressed the question of whether a parent is also entitled to recover damages for the loss of a child's companionship and society.
In Brennan v. Biber, 93 N.J. Super. 351 (Law Div. 1966), the parent of three children, who were injured in an automobile accident, brought suit on behalf of her children seeking compensation for their injuries and for her loss of her children's society and companionship. The trial court instructed the jury that it could consider, as a part of the parent's per quod claim, the loss of society and companionship of the children. The jury awarded damages for the injuries sustained by one of the children. Nothing was awarded for the parent's per quod claim. The court denied a motion for a new trial, later affirmed by the Appellate Division, and in dicta, stated that it was in error in instructing the jury on the parent's per quod claim.

*20 I have concluded, therefore, that a parent in a negligence action may not recover damages for loss of the society and companionship of an injured child, for the following reasons: (a) there is no authority in this State for allowing such recovery; (b) those New Jersey cases which authorize a parent to recover damages beyond medical expenses and loss of earnings and services involve the tort of seduction and expressly distinguish between seduction actions (where they are allowed) and negligence actions (where they are not allowed); (c) the Supreme Court in Ekalo, [v. Constructive Service Corp. of America, 46 N.J. 82 (1965)] predicated its holding permitting a wife in a negligence action to recover for loss of her husband's consortium solely on the ground that this would place her on an equal footing with her husband (who already had a reciprocal right as to loss of her consortium) and expressly stated that this decision did not compel it to go further by allowing a similar recovery in the parent-child relationship, and (d) until an appellate court rules otherwise, in view of the foregoing, it appears unwise as a matter of policy, for a trial court to expand the area of recoverable damages in a negligence action to include recovery by a parent for loss of a child's society and companionship, particularly since New York, Pennsylvania and Alabama have ruled to the contrary in well-reasoned opinions. [Id. at 369]
Case law in most jurisdictions supports the conclusion of the trial court in Brennan. The other reasons usually given for denying recovery are: damages are remote and uncertain and such a cause of action would result in double recovery and multiple suits. In Borer v. American Airline, Inc., 19 Cal.3d 441, 138 Cal. Rptr. 302, 563 P.2d 858 (Sup.Ct. 1977), the court put it this way:
Judicial recognition of a cause of action for loss of consortium, we believe, must be narrowly circumscribed. Loss of consortium is an intangible injury for which money damages do not afford an accurate measure or suitable recompense; recognition of a right to recover damages for such losses in the present context, moreover, may substantially increase the number of claims asserted in ordinary accident cases, the expense of settling or resolving such claims, and the ultimate liability of the defendants.... (W)e perceive significant differences between the marital relationship and the parent-child relationship that support the limitation of a cause of action for loss of consortium to the marital situation.... [138 Cal. Rptr. at 304, 563 P.2d at 860]
See also Baxter v. Superior Court of Los Angeles County, 19 Cal.3d 461, 138 Cal. Rptr. 315, 316, 563 P.2d 871, 872 (Sup.Ct. 1977); Siciliano v. Capital City Shows, Inc., 124 N.H. 719, 475 A.2d 19 (Sup.Ct. 1984); Annotation, 60 A.L.R.3d 553 (1976) (discusses jurisdictions which have not allowed the cause of action).
There appears to be a trend, however, allowing a parent's per quod claim for loss of companionship and society in cases *21 where a child has been seriously injured, based either on statute,[1] or by analogy with the right of a spouse to recover damages for the loss of consortium.
In Hair v. County of Monterey, 45 Cal. App.3d 538, 119 Cal. Rptr. 639 (Ct.App. 1975), the California Court of Appeals stated:
(L)ogically, there is no objection to an extension of the rule ... so as to permit recovery by parents for lost pleasure, society, comfort and companionship sustained by reason of injuries inflicted upon their child ... (N)o reasonable distinction can be drawn between the right of parents, in appropriate circumstances, to seek recovery for lost comfort, society and companionship of an injured and totally helpless child and the right of a spouse, in similar circumstances, to seek recovery for loss of consortium.... [119 Cal. Rptr. at 643]
Shockley v. Prier, 66 Wis.2d 394, 225 N.W.2d 495 (Sup.Ct. 1975), was one of the first cases in the country to recognize this and allow a per quod claim by the parents of an injured child. In this case, the Wisconsin Supreme Court permitted a parent, whose child was permanently blinded and disfigured, to recover damages for the loss of companionship and society. The court stated:
The "remedy" of loss of a minor's earning capacity during minority is of diminishing significance ... the family relationship has changed. Society and companionship between parents and their children are closer to our present day family ideal than the right of the parents to the "earning capacity during minority," which once seemed so important when the common law was originally established. [Id. 225 N.W.2d at 499]
....
We submit that today's relationship between parents and children is, or should be, more than that between master and servant. [Id. 225 N.W.2d at 500]
....
We conclude that the law should recognize the right of parents to recover for loss of aid, comfort, society and companionship of a child during minority when such loss is caused by the negligence of another. [Id. 225 N.W.2d at 499]
*22 In Sizemore v. Smock, 155 Mich. App. 745, 400 N.W.2d 706 (Ct.App. 1986), a Michigan court reasoned:
(w)hen a child is negligently injured, a corresponding "injury" to the parent is within the foreseeable risk of harm ... and whether a child is injured or killed the loss suffered by the parent can be devastating. In the case of injury, the quality of the parent-child relationship can be seriously impaired. The recognition of a cause of action in favor of the parent for loss of a child's society and companionship merely attempts to compensate the parent, however, inadequately, for such a loss. [400 N.W.2d at 708]
Other states have reached similar conclusions. See Stephens v. Weigel, 336 Ill. App. 36, 82 N.E.2d 697 (Ill. App.Ct. 1948) (in dictum); Dymek v. Nyquist, 128 Ill. App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1984); Reben v. Ely, 146 Ariz. 309, 705 P.2d 1360 (Ct.App. 1985); Hall v. Birchfield, 718 S.W.2d 313, 338 (Tex. App. 1986); Miller v. Subia, 514 P.2d 79 (Colo.Ct.App. 1973) (by implication); Yordan v. Savage, 279 So.2d 844 (Fla.Sup.Ct. 1973) (by implication).
The dissent in Siciliano v. Capital City Shows, Inc., supra, is a forceful argument for recognition of a parent's per quod claim.
The origins of the pecuniary loss limitation "are rooted in Charles Dickens' England," [citation omitted] "an era when ample work could be found for the agile bodies and nimble fingers of small children." (citation omitted). The damages in these actions were limited to pecuniary loss because "children during minority were generally regarded as an economic asset to parents." [Citation omitted] During this time, children began working on the family farm or appeared at the minehead or factory gate as early as age 10. 475 A.2d at 26]
....
The Court today chooses not to recognize the right of parents to recover for the loss of society when a child is negligently killed or severely injured. This decision is based on anachronistic concepts from which the majority cannot free itself to examine present-day norms. In my opinion, a parent's loss of society when a child is negligently killed or severely injured is a cognizable injury for which justice demands compensation. A child is no longer property or an economic unit in the eyes of the law. [Id. 475 A.2d at 25.]
Finally, in a law review article in which the author urges departure from the common law rule denying recovery, this analysis is set forth:

*23 (T)he time has come to question the common law rule. Why should the courts deny recovery for the partial loss of the ability of parents and children to function in a normal, mutually supportive relationship with each other? Have the courts refused to compensate this loss because it is an intangible one? If so, what distinguishes this loss from other intangible losses for which tort damages are recoverable? Given the fundamental importance of the parent-child relationship, what justification can be advanced for failing to accord it the same type of legal protection that the marital relationship receives through the action for loss of consortium? Similarly, once the legislature has authorized the recovery of wrongful death damages for a tortious interference with the intangible qualities of the parent-child relationship, what justification can be advanced for refusing to recognize an action for lost society and companionship? [Love, "Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship," 51 Ind.L.J. 590, 594 (1976).]
He concludes:
Given the fundamental importance of the parent-child relationship, the genuineness of the loss sustained, and the administrative feasibility of allowing compensation, the courts ought to depart from the common law prohibition and allow recovery for lost society and companionship. [Id. at 634.]
Neither New Jersey precedent nor statute prohibits a parent's per quod claim for the loss of a child's companionship and society. This court is in accord with the decisions which have permitted recovery for the loss of a child's companionship and society. The reasoning of those cases are enlightened and their conclusions equitable.
Under the circumstances, I shall allow the plaintiff's parent a per quod claim for loss of their child's companionship and society, and award to them the sum of $50,000, a sum I find is fair and reasonable to compensate them for their loss.
NOTES
[1] Iowa Code Ann.Rule Civ.Pro. 8 (1974). Wash. Rev. Code Ann. § 4.24.010 (1975).