JOSEPH MURRAY, BY MARY MURRAY, HIS NEXT FRIEND, AND MARY MURRAY, INDIVIDUALLY, PLAINTIFFS, v. LOUIS COHEN, DEFENDANT.

Decided February 16, 1926.

Negligence—Injury to an Invited Passenger on an Auto Truck— Passenger, Riding on Running Board, was Thrown When He Undertook to Alight—Question Whether He was Invited or Asked to Ride, Also Whether He was Thrown or was In- jured From His Own Attempt to Alight—Negligence of De- fendant Shown—Contributory Negligence Not Shown—Ver- dict Not Contrary to Weight of Evidence—Verdict Not Ex- cessive.

On defendant's rule to show cause.

For the rule, *Freeman Woodbridge.*

Contra, *David Wilentz.*

PER CURIAM.

In an action in this court by the plaintiff Joseph Murray, a minor, fourteen years of age, by next friend, against the defendant, to recover damages from the latter for personal injuries sustained by the former through the negligence of the defendant, and in which action the minor's mother, as co-plaintiff, joined to recover for loss of services of her son, past, present and prospective, and for moneys expended, and to be expended, on behalf of her son, by reason of his in- juries, for medical and surgical treatment, &c., a jury in the Middlesex Circuit rendered a verdict of $10,000 for the infant plaintiff and a verdict for his mother, co-plaintiff, in the sum of $5,000.

The defendant having obtained, at the Circuit, a rule to show cause why a new trial should not be granted, counsel, in support of the rule, relies, in his brief, on five grounds, which will be taken up and considered *seriatim.* Before

doing this an epitome of the facts upon which the proper solution of the case depended should be given.

The plaintiff Joseph, at the time he met with his injuries, on April 18th, 1924, was fourteen years of age. He was a clerk in Gurka's grocery store at Port Reading. On the day in question the defendant, Cohen, a wholesale vegetable and fruit dealer, had stopped with his auto truck at Gurka's store, a customer, to transact business there. Joseph Kennedy, Cohen's helper, remained outside on the truck. While the defendant was in Gurka's store it was raining. Joseph testified: "Mr. Gurka told me to go home for lunch, and it was raining quite hard out, and Mr. Cohen was in the store at the time, and Mr. Cohen said to me, he said, 'Come on, get on, I will give you a ride down.' So, I got on the truck with him and went down." It appears that the defendant was on his way to Perth Amboy and en route would pass the street where Joseph resided. Both the defendant and his helper occupied the driver's seat, and Joseph took his stand on running board, on the left-hand side of the truck, near to where the defendant was seated. When the truck approached the street where Joseph wanted to alight, Joseph, in his testimony, says: "Well, I told Mr. Cohen I wanted to get off here, and he said to me, 'Hop off,' and I told him I wouldn't hop off on account of the road being slippery; so he slowed down a little, just as I was getting balanced to get off why he juggled the truck, and on account of the 'juggle' threw me off and I got caught in the back." When asked what he meant by "juggle" he said "jerked;" and said that the truck went faster. The only witnesses as to how the accident happened besides the plaintiff, were the defendant and his helper. The defendant admitted that Joseph was standing on the running board, and that the road was slippery, and had asked that the truck be stopped to let him off, but that Joseph jumped before the truck was brought to a standstill. On the question whether the defendant invited Joseph to ride on the truck, the defendant testified that he did not, but that Joseph asked that he be permitted to get on the truck. The first

point made and argued in the brief is: "The verdict was contrary to law in that no negligence on the part of the defendant was shown."

There is no merit in this contention. Under the testimony the jury was warranted in finding that the truck was being slowed down at Joseph's request and while Joseph was preparing to alight, the defendant, with knowledge of the slippery condition of the highway and of the place where Joseph was standing, with a jerk accelerated the speed of the truck and threw the plaintiff off. The second point made is: "The verdict was contrary to law, because it was clearly shown that the plaintiff Joseph was guilty of contributory negligence."

This contention is without substance. It is quite clear from the testimony that the position taken by Joseph on the running board had no casual relation to this injury. Of course, if it had appeared that Joseph had been swept from the running board by a passing vehicle, or had fallen from the truck by reason of the ordinary movements of the vehicle, in its general prudent operation, then, of course, he would be debarred of a recovery upon the ground that he had assumed those risks. But such is not the case here. See *New York, Lake Erie and Western Railroad Co.* v. *Ball,* 53 *N. J. L.* 283; *Menger* v. *Laur,* 55 *Id.* 205; 20 *L. R. A.* 601. Thirdly, it is argued that the verdict was contrary to the weight of evidence. We do not think it is. It is a significant circumstance that the defendant found it necessary to put on his emergency brake to stop the truck, if he were going at a speed of five or six miles an hour and proceeding to a standstill at the time, as he says he did, when he saw Joseph jump from the running board. This circumstance tends to corroborate Joseph's testimony that the speed of the truck was accelerated as he was preparing to alight. What has been said under the preceding points disposes adversely to defendant's contention under the fourth point in the brief, that the trial judge should have either granted the motion for a nonsuit or directed a verdict for the defendant. Lastly, it is said that

the verdicts are excessive. It is conceded that there is no disagreement as to the seriousness of the injuries sustained by Joseph. There is, however, disagreement between the medical experts as to the length of time that Joseph will suffer from his injuries.

The physician who attended him at the hospital testified that the injuries were of a painful and distressing character and that for a long period of time the lad "had a great deal of pain and suffering;" that "all the skin had been torn away around the knee and for quite a large area above the knee. The muscles were torn and bleeding and the bone of the leg was broken above the knee;" that there was a fracture of the lower femur; that the boy was much shocked and that there were other minor cuts and bruises on him. The doctor further said "that the character of the injury to the patient's skin was such that mechanical appliances could not be applied to the break and fracture; that the skin was so traumatized and bruised and torn that there was no place to put your traction on. And besides that, his condition was such he would not permit of much handling; for a long time it was question whether he would live or die. He was very sick for a long time. He was more or less in a dazed condition." At the time of the trial he was still a patient in the hospital, where he had been from the time of his injury, for the space of a year. According to the doctor's testimony the patient will be compelled to remain in the hospital for a long time to come and will have to undergo several operations of skin grafting and bone grafting, &c. In the doctor's opinion it will require one year and a half to two years longer to treat the injuries, and even then the injured leg will never resume a normal condition, in that there will be a slight shortening of the leg, from three-quarters of an inch to an inch, and besides, he will have a large amount of scar tissue. At the time of the trial there was a shortening of the leg from three to four inches, and in order to straighten the leg an operation is required, consisting of the breaking of certain bones that are united on the side from the callus that is thrown out,

which operation is accompanied by some danger to the life of the patient. Of course, the plaintiff cannot be compelled to submit to an operation which involves the least danger to life and even if he voluntarily submitted to the operation it is problematical whether or not it will prove entirely successful. On the whole we cannot say that the award of $10,000 is so clearly excessive that it evinces passion, prejudice, mistake or partiality on part of the jury. Nor was the award of $5,000 to the mother of Joseph excessive. Counsel of defendant, in his brief, says: "The total amount of the damage sustained by Mary Murray was at the outside figure twenty-five hundred and thirty-eight dollars [$2,538], and for this the jury gave her five thousand dollars [$5,000], or nearly double the amount proved," &c. The amount of $2,538 is made up of hospital expenses, physicians' and surgeons' bills incurred up to the time of the trial and to be incurred for future hospital and physician bills and the cost of future surgical operations, and the loss of the boy's wages calculated for two years, only, and all this upon the theory the boy will be fully recovered by that time to go to work again and at least to earn the same amount. The mother, the father being dead, is entitled to the earnings of her son until he attains his majority, unless he is sooner emancipated. The assumption that Joseph, in the two years, from the time of his injury, arbitrarily adopted in the defendant's computation as the time when he will be able to go to work, has no support from the evidence. There was testimony in the case from which the jury could reasonably infer that the time when the plaintiff would be enabled to go to work would be of a much longer period, and further that by reason of his injuries his earning capacity would be impaired materially. Rule is discharged, with costs.