744 A.2d 1226 (1999)
328 N.J. Super. 129
William MEALEY, III, William Mealey, Jr., Carol Mealey Plaintiffs,
v.
John B. MARELLA, John A. Marella, Donna Marella, Alleram Corp., Dean Walz, Janet Walz, Nicholas Tussman, Evesham Township, John Does 1-10, John Roes 1-10, Jane Does 1-10 Defendants.
State Farm Indemnity, Plaintiff,
v.
John B. Marella, John A. Marella, Donna Marella, Prudential Insurance Company,Alleram Corp., Dean Walz, Janet Walz, Nicholas Tussman, State Farm Fire and Casualty, Evesham Township, John Doe Insurance Co. I-V, John Doe Insurance Co. VI-X, John Doe Insurance Co. XI-XV, John Doe Insurance Co. XVI-XX, John Doe Insurance Co. XXI-XXV, John Doe Insurance Co. XXVI-XXX, John Doe Insurance Co. XXXI-XXXV, John Doe Police Officer I-X, John Does I-X, Jane Does I-X, John Roes I-X, John Doe Bar Owners I-X, John Doe Liquor Store Owners I-X, Defendants.
Superior Court of New Jersey, Law Division, Burlington County.
Decided August 26, 1999.
*1227 Michael Patrick Mullen, Cherry Hill, for plaintiffs, William Mealey, Jr. and Carol Mealey.
Erin R. Thompson, Tuckahoe, for defendant, Prudential Insurance Co. (Powell, Birchmeier & Powell, attorneys).
ALMEIDA, J.S.C.
Two issues are before the court, on the parties' respective motions for summary judgment, arising out of a motor vehicle accident that occurred at 10:22 p.m. on December 16, 1994. One of the movants herein, the parents of William Mealey III, raise these issues in the tragic circumstances of their son, 18 years and four months old at the time of the accident, being rendered a quadriplegic as a result of it. The issues are (1) the Mealey parents' claim for loss of the care, comfort and companionship of their sonthe loss of consortium claimand (2) the Mealey parents' claim for negligent infliction of emotional distress as a result of observing their son in critical condition at the hospital.
The facts surrounding the accident, the parental involvement after the accident, and the resultant injuries to William Mealey III are not in dispute. Mr. Mealey was a passenger in an automobile operated by John Marella which was involved in an accident, wherein the vehicle left the roadway when Mr. Marella attempted to execute a turn. The emergency attendants at the scene had Mr. Mealey airlifted to Cooper Hospital Trauma Center where emergency lifesaving techniques were employed.
Mr. Mealey's parents were notified of the accident at approximately 12:30 a.m. on December 17, 1994 and immediately left their home to attend to their son. Upon arrival Mr. Mealey was lying on a table, unconscious and covered in blood with his clothes cut away. Mr. Mealey had a large wound on his head which was closed with staples. Mr. Mealey's parents were subsequently informed that their son was alive but quadriplegic. They have incurred continuing medical expenses in connection with the care, treatment, evaluation, and rehabilitation of their son.
Prior to the accident, William Mealey III was a high school student living with his parents. He regularly assisted with household chores such as mowing the *1228 lawn, shoveling snow, taking out the trash, doing laundry, and hanging holiday decorations. He assisted in caring for his grandparents and babysitting his brother's children. Mr. Mealey, approximately six to ten times a year, went camping with his family. He went fishing, played street hockey, and attended professional hockey and football games with his father.
Mr. Mealey's parents argue that they have both a statutory and common law right to recover for medical expenses and for loss of consortium as a result of the catastrophic injuries suffered by their son. Defendant, Prudential Property & Casualty Insurance Company, argues that the Mealey parents are not entitled to such recovery because William Mealey is an adult pursuant to N.J.S.A. 9:17B-1(a) and that a parent's claim for loss of consortium of an adult child is not compensable in New Jersey.
The issue of compensability of a parent's claim for loss of consortium of an adult child is one of first impression in New Jersey. Generally, the loss of a child's consortium is the loss or decrease of the child's earnings, services, companionship or contributions as a result of a defendant's negligence. See, e.g., Davis v. Elizabeth Gen. Med. Ctr., 228 N.J.Super. 17, 21, 548 A.2d 528 (Law Div.1988); Brennan v. Biber, 93 N.J.Super. 351, 225 A.2d 742 (Law Div.1966), aff'd, 99 N.J.Super. 247, 239 A.2d 261 (App.Div.1968). The relevant statutory provision is N.J.S.A. 9:1-1, which provides, in pertinent part:
The father and mother of a minor child are equally entitled to its services and earnings....The parents jointly may maintain an action for the loss of the wages or services of their minor child when such loss is occasioned by an injury, wrongfully or negligently inflicted upon such child.
There is no statutory provision which addresses the compensability of such a claim when the child is over the age of majority, as in the instant matter. Furthermore, that issue has not been decided by any Court in the state. The District Court of New Jersey, in an unpublished opinion found that:
No published case in New Jersey, this District Court, or the Third Circuit involves a loss of consortium claim by a parent arising out of an injury to an adult child. Therefore, New Jersey case law neither expressly permits an action by a parent for loss of consortium of an adult child nor forbids a common law action for the same.
Kanofsky v. University of Medicine and Dentistry of New Jersey, Civ. No. 96-3007, at 11 (D.N.J. October 1, 1997). The District Court further noted that "similar to New Jersey case law, the statutory language neither specifically permits an action by parents for loss of consortium of an adult child nor proscribes a common law action for the same." Id. at 12. Similarly, this court finds that there is neither legislative authority nor binding precedent in this jurisdiction upon which to base a decision on this issue. Therefore, the court must look to other jurisdictions for guidance.
Among jurisdictions recognizing a loss of consortium claim to parents of an adult child, the leading case is Frank v. Superior Court of Arizona, 150 Ariz. 228, 722 P.2d 955 (1986). In Frank, the Supreme Court of Arizona recognized that the common law claim for loss of consortium was grounded in the master/servant relationship and that a father was entitled to the loss of services of a minor child. Id. at 958-59. The Court further noted that " the most salient legal argument against extending the filial consortium action to adult children is the fact that emancipation frees parents and children from the reciprocal legal obligations of support and obedience." Id. at 958. That argument, as stated by the Frank court, assumes that "parents have some form of entitlement to the services and earnings of their children during their children's minority, loss of which is compensable, but *1229 that accession to majority expunges this entitlement and the concomitant right to recovery for the injury to the children." Ibid.
While recognizing the basis for that argument, however, the Arizona Court refused to apply that rationale in a modern context where the present nature of the filial relationship between parent and child bears little resemblance to the master/servant relationship that existed when the cause of action developed. The court stated:
We believe that this argument against extension of a filial consortium action to adults is premised upon an archaic and outmoded pecuniary theory of parental rights and fundamentally misapprehends the modern elements of consortium.
Ibid. The Court further reasoned:
We do not believe that an age distinction is justified. The demise of the pecuniary services theory of consortium and subsequent emergence of companionship and society as the primary components of the action has vitiated the legitimacy of any age distinction in filial consortium actions.
Id. at 960.
There is precedent in New Jersey that acknowledges the evolution of the parent/child relationship and the resultant development of a cause of action for loss of consortium based on loss of society and companionship rather than loss of services. The first case to recognize a per quod claim for loss of society and companionship is Davis v. Elizabeth Gen. Med. Ctr., 228 N.J.Super. 17, 548 A.2d 528 (Law Div. 1988). The Davis court, rejecting a prior Law Division holding to the contrary in Brennan v. Biber, 93 N.J.Super. 351, 225 A.2d 742 (Law Div.1966), aff'd, 99 N.J.Super. 247, 239 A.2d 261 (App.Div.1968), and noting a jurisdictional trend, concluded that:
Neither New Jersey precedent nor statute prohibits a parent's per quod claim for the loss of a child's companionship and society. This court is in accord with the decisions which have permitted recovery for the loss of a child's companionship and society. The reasoning of those cases are enlightened and their conclusions equitable.
Id. at 23, 548 A.2d 528. A similar conclusion was reached in Shockley v. Prier, 66 Wis.2d 394, 225 N.W.2d 495 (1975), which held:
The "remedy" of loss of a minor's earning capacity during minority is of diminishing significance...the family relationship has changed. Society and companionship between parents and their children are closer to our present day family ideal than the right of the parents to the "earning capacity during minority," which once seemed so important when the common law was originally established.
Id. at 499.
The District Court of New Jersey, in Carter v. University of Medicine and Dentistry of New Jersey, 838 F.Supp. 957 (D.N.J.1993), also found that New Jersey recognizes the loss of consortium cause of action premised upon the loss of companionship and society. In so holding the District Court looked to the trend both in New Jersey and in other jurisdictions. Id. at 968-69. Furthermore, the District Court noted that such a holding was consistent with the New Jersey Supreme Court's holding in Green v. Bittner, 85 N.J. 1, 424 A.2d 210 (1980). In Green, the Court addressed the issue of a parent's claim for loss of a child's companionship in the context of a wrongful death action. The Court held that "it would be a miscarriage of justice to limit [a parent's] damages solely to loss of anticipated financial contributions by the child after she becomes a wage earner." Id. at 4, 424 A.2d 210. The Green Court further emphasized the archaic principles upon which the old common law rule is founded and held that to deny damages for loss of companionship as a matter of law "would result in a return to the outmoded doctrine that a *1230 child is a liabilitynot an asset." Ibid. (citations omitted).
This court finds that the cause of action for loss of consortium in New Jersey encompasses a per quod claim for loss of companionship and society of a child. While New Jersey presently recognizes that cause of action in cases involving injury to a minor child, the theory does not extend to a parent's claim for the loss of companionship and society of an adult child. The recovery limitation is based upon an age distinction which is no longer relevant to today's society. Age serves as an antiquated barrier to recovery directing that we focus on a pecuniary relationship that may have thrived in an agrarian society. Today the relationship itself should be examined by the jury without the illogical conclusion that the filial relationship ceases at the age of majority. Simply stated, while a parent's legal entitlement to a child's services may once have ended at the age of eighteen, there is no such limitation on the exchange of comfort, companionship, society, counsel, love, caring or dependence between a parent and child. These factors are the underpinnings of the cause of action as it presently exists in this state and they bear no connection, legal or otherwise, to an age limitation.
Other jurisdictions have rejected a parent's claim for loss of companionship and society for injury to an adult child. However, the legal principles underlying the development of the loss of consortium cause of action in those jurisdictions are not consistent with the law in New Jersey. See, e.g. Boucher v. Dixie Medical Center, 850 P.2d 1179 (Utah 1992) (inequitable to allow filial consortium claim in light of legislative abolition of spousal consortium cause of action); Schmeck v. City of Shawnee, 231 Kan. 588, 647 P.2d 1263 (1982) (denying filial consortium claim where state does not recognize loss of consortium for injuries caused by the negligence of another); Brower v. City of Philadelphia, 124 Pa.Cmwlth. 586, 557 A.2d 48 (Ct.1989) (denying parents' claim for loss of adult child's filial consortium because Pennsylvania does not recognize cause of action for loss of companionship and society).
The reasoning of the Arizona Supreme Court in Frank, however, parallels the development of the filial consortium cause of action in New Jersey. The Supreme Court of Hawaii has also recognized a filial consortium cause of action for injury to an adult child in the case of Masaki v. General Motors Corp., 71 Haw. 1, 780 P.2d 566 (1989). Both Masaki and Frank are particularly compelling in light of the rationale in Green, supra, because in addition to rejecting the outdated age limitation for the consortium cause of action, the opinions note the anomaly of allowing a parent's recovery for loss of companionship and society in a wrongful death action while rejecting such recovery for a debilitating injury:
[N]o meaningful distinction can be drawn between death and severe injury where the effect on consortium is concerned. Often death is separated from severe injury by mere fortuity; ... Perhaps the loss of companionship and society experienced by the parents of a child permanently and severely injured...is in some ways even greater than that suffered by parents of a deceased child. Not only has the normal family relationship been destroyed, as when a child dies, but the parent also is confronted with his loss each time he is with the child and experiences again the child's diminished capacity to give comfort, society and companionship.
Frank, supra at 957-58 (citing Note, The Parental Claim for Loss of Society and Companionship Resulting From the Negligent Injury of a Child; A Proposal for Arizona, 1980 Ariz.St.L.J. 909, 923). In Green, the court concluded that, in a wrongful death context, compensability for a parent's loss is not limited by the age of majority and should be extended to include loss of companionship and care:

*1231 The fact that parents are usually legally entitled to the services of their children until majority seems to have led us in New Jersey to the implicit conclusion that that is the limit of the parents' loss (other than prospective financial contributions). But continuing family relationshipsuninterrupted by the death of a family memberencompass more than the exchange of physical chores around the house at various times during the family's history, and even more than direct financial contributions. ... Just as the law recognizes that a child may continue performing services after age 18, and that monetary contributions may also be received by the parents thereafter when the child becomes productive, it should similarly recognize that the child may, as many do, provide valuable companionship and care as the parents get older.
Green, supra at 11, 424 A.2d 210.
It is clear in New Jersey that a parent can recover for the loss of services and for the loss of companionship and society of both a minor and an adult child in a wrongful death case. A parent may also recover for the loss of services and for the loss of companionship and society of a minor child who has received devastating injuries. There is no legally discernible reason not to recognize a parent's right to recovery for loss of companionship and society due to injury to their adult child, particularly under the facts presented in this case.
The court does not expect a flood of litigation flowing from this holding. The factors relied upon in extending the cause of action to the parties here are no less articulable than in Green. In the absence of a mutual exchange of comfort, companionship, society, counsel, love, caring or dependence between a parent and child, the claim fails. However, the quality and nature of a particular filial relationship must be determined on a case-by-case basis. Such a relationship may be one of love and caring, or one of distance and indifference. Financial dependence may be an important factor, "...either prior to or after the accident or both." Monahan v. Town of Methuen, 408 Mass. 381, 558 N.E.2d 951 (1990). Comfort, companionship, society, counsel, love and caring are other factors, however ephemeral, to be evaluated by the fact finder.
In the instant matter, William Mealey was a high school student living with his parents at the time of the accident. The record indicates that he was financially dependent on his parents. He performed household chores and helped with holiday decorations. He went camping, fishing, and attended hockey games with his parents. In all respects, William Mealey and his parents maintained a strong parent/child relationship. It is undisputed that the injuries suffered by William Mealey were catastrophic and debilitating; it is equally clear that a jury could fairly determine the compensable impact upon his relationship with his parents.
For the foregoing reasons, the court finds that the Mealey parents' claim for loss of consortium, specifically, loss of companionship and society, may go to the jury for determination.
A final note is in order. The court is aware that, generally, a new cause of action should be created by the Supreme Court and not by an appellate or lower court. Coyle v. Englander's, 199 N.J.Super. 212, 226, 488 A.2d 1083 (App.Div. 1985). See also, Passaic Township Bd. of Educ. v. Passaic Township Educ. Ass'n, 222 N.J.Super. 298, 303, 536 A.2d 1276 (App.Div.1987); Namm v. Charles E. Frosst & Co., 178 N.J.Super. 19, 35, 427 A.2d 1121 (App.Div.1981). This opinion does not create a new cause of action, but logically extends a theory of recovery. As discussed infra, the pecuniary theory as the basis for the consortium cause of action was criticized in Green. The age limitation which necessarily arose from that premise no longer exists. This opinion *1232 is intended to redefine the cause of action in its present context.
The Mealeys also seek damages for negligent infliction of emotional distress arising from their observation of their son while he was receiving treatment at Cooper Trauma Center. The seminal case in New Jersey on this issue is Portee v. Jaffee, 84 N.J. 88, 417 A.2d 521 (1980), which held that in order to recover for negligent infliction of emotional distress, a party must prove four elements:
(1) death or serious personal injury of another caused by defendant's negligence;
(2) a marital or intimate, familial relationship between plaintiff and the injured person;
(3) observation of the death or injury at the scene of the accident; and
(4) resulting severe emotional distress.
Id. at 101, 417 A.2d 521.
The primary issue in dispute in this matter is the third element. As set forth herein, it is undisputed that William Mealy's parents did not observe their son in his injured state until they arrived at the hospital some time after 12:30 a.m. on December 17, 1994over two hours after the accident. Defendant argues that plaintiff fails to meet the third element of Portee. With regard to that element, the Supreme Court has stated that "merely being on the scene may not be enough. The injury must be one that is susceptible to immediate sensory perception, and the plaintiff must witness the victim when the injury is afflicted or immediately thereafter." Frame v. Kothari, 115 N.J. 638, 644, 560 A.2d 675 (1989).
Several cases have interpreted the contemporaneousness requirement of the third element liberally. Polikoff v. Calabro, 209 N.J.Super. 110, 114 n. 3, 506 A.2d 1285 (App.Div.1986) categorized the contemporaneousness requirement as arbitrary. Also, Mercado v. Transport of New Jersey, 176 N.J.Super. 234, 422 A.2d 800 (Law Div.1980) held that the Portee opinion "relates not to witnessing the actual impact, but to witnessing the suffering of the victim." Both cases, however, are factually distinguishable from the case at bar.
In Polikoff, the plaintiffs claimed to have suffered emotional distress in connection with the defendants' alleged negligence in inserting a central venous pressure catheter into the child's right internal jugular vein for purposes of monitoring and, if subsequently deemed necessary by the surgeon, for hyperalimentation. From the time she returned to her hospital room from the postoperative recovery room, one or both of her parents was with her at all times. In finding that the third element of Portee was satisfied the court stated:
injury to the child resulted not from the allegedly negligent insertion of the catheter while she was on the operating room table, but from the introduction of hyperalimentation fluid into the incorrectly positioned catheter. Mrs. Polikoff observed the infliction of that injury, and she observed her child through all of the consequential stages of that injury concluding with the fatal cardiac tamponade. These facts are sufficient to satisfy the bystander rule.
Id. at 114, 506 A.2d 1285. The third Portee element, therefore, was satisfied by Mrs. Polikoff's actual observation of the negligent conduct.
In Mercado, there was no direct observation of the underlying accident; however, the court found that contemporaneous observation occurred where the plaintiff witnessed her injured child immediately after the accident:
The uncontradicted facts shown by the papers are: On April 19, 1977, at about 2:25 p.m., Luis Medina, the eight-year-old decedent, was struck by a bus owned by defendant Transport of New Jersey and operated by defendant Sumner Hughes, Jr. Plaintiff Aida M. Mercado did not witness the accident but learned of it minutes later when her daughter *1233 rushed into her residence and told her what had just occurred. Mrs. Mercado hurried outside and saw her son in the street, severely injured and unconscious. Luis Medina died at 3:45 p. m. that same afternoon.
Id. at 236-37, 422 A.2d 800. (emphasis added).
In the instant matter, the accident occurred at 10:22 p.m. and the Mealeys were notified of its occurrence at 12:30 a.m. They arrived at the hospital shortly thereafter. It is undisputed that the younger Mealey's condition at that time was severe and that his parents observed the full impact of his injuries and suffered grief as a result. However, a finding of contemporaneous observation after a delay of more than two hours would render the third element of Portee meaningless. There is no authority in New Jersey that would permit this court to strain the plain reading of Portee to allow recovery in the instant factual scenario. Therefore, the court finds that the Mealey's claim for negligent infliction of emotional distress must fail.