753 A.2d 187 (2000)
332 N.J. Super. 267
Jeanette M. TYNAN, Plaintiff-Appellant,
v.
Jeffrey CURZI, an Attorney at Law and Morrow & Curzi, a Law Firm, Defendants-Respondents,
L. David Balk, an Attorney at Law; Balk, Oxfeld, Mandell & Cohen, a Law Firm; Ann Bartlett, an Attorney at Law and Alexander & Bartlett, a Law Firm, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 2000.
Decided June 28, 2000.
John C. Burley, Leonia, for plaintiff-appellant.
James G. O'Neill, Cape May County, for defendants-respondents (Fitzpatrick, Reilly, Supple & Gaul, attorneys; Mr. O'Neill, on the brief).
Before Judges KING, LEFELT and LINTNER.
The opinion of the court was delivered by LINTNER, J.S.C. (temporarily assigned).
This appeal arises from a legal malpractice claim alleging that Jeffrey Curzi (defendant) failed to pursue a novel cause of action for per quod damages on behalf of his client, Jeanette M. Tynan (plaintiff). We are required to decide whether a parent can maintain an action for per quod damages, including loss of society and companionship, as a result of injuries sustained by her child after the child has reached the age of majority. We decline to extend the common law which limits parents' per quod damages for loss of services, earnings and medical expenditures resulting from injuries to a minor child.
On April 7, 1998, plaintiff filed a six-count second amended complaint, naming several attorneys and law firms as defendants. The first five counts of the complaint, which do not relate to this appeal, alleged several incidents of professional malpractice against the various defendants arising out of activities concerning plaintiff's matrimonial action against her former husband. The sixth count was limited to allegations of professional negligence against defendant for his failure to seek per quod damages in favor of plaintiff in a personal injury law suit, filed by him on *188 behalf of plaintiff's daughter, then age nineteen.
Both parties moved for summary judgment on the sixth count of the complaint. In a letter opinion dated January 3, 2000, the motion judge denied plaintiff's motion and granted defendant's cross-motion for summary judgment, dismissing the sixth count of the complaint. On January 18, 2000, plaintiff sought leave to appeal the motion judge's grant of partial summary judgment in favor of defendant dismissing the sixth count of her complaint. We granted plaintiff's motion on February 10, 2000. Subsequent to our grant of leave to appeal and prior to oral argument, the motion judge, in a letter opinion dated March 22, 2000, granted summary judgment in favor of all defendants dismissing the remaining counts of the complaint. As a result, this interlocutory appeal is now an appeal from a final judgment.
On October 3, 1990, plaintiff's daughter, Amy Varecha (Amy), age nineteen, was severely injured in an automobile accident. She suffered a closed head injury with multiple fractures of the facial bones, left ankle, left tibia, collarbone, and ribs. She was unconscious and remained in a coma for thirty-one days. Prior to the accident, Amy was a second-year college student living at home. It is undisputed that, as a result of the accident, Amy is legally blind and suffers continuing cognitive deficiencies that have rendered her unable to care for herself. Amy has been adjudicated incompetent and plaintiff is her appointed legal guardian.
At oral argument, though neither briefed nor raised before the motion judge, plaintiff's counsel asserted that plaintiff also should be compensated for her emotional distress as well as the services she now must provide her daughter. Plaintiff further contends that the motion judge erred, that her malpractice case was viable because the status of the law confers the right to seek per quod damages for lost services, earnings, society and companionship, resulting from Amy's injuries, notwithstanding her age, as she was not emancipated at the time of the accident. We disagree.
A father's right to recover for loss of services or earning capacity as a result of tortious injury to a child is firmly rooted in common law. W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 125 at 934 (5th ed.1984); see also Timothy D. Ament, Parents' Loss of Consortium Claims for Adult Children in Iowa: The Magical Age of Eighteen, 41 Drake L.Rev. 247, 252 (1992). Because a father was entitled to the services of his minor child, the common-law claim was limited to the loss of services or earning capacity and medical expenses. Keeton, supra, § 125 at 934. The right was given only to the father, unless the child was either illegitimate or the mother had become entitled to the child's services as a result of court order or death. Id. at 935. A parent could not recover for loss of services or medical expenses incurred after the child reached majority. Ibid.; see also Murray v. Cohen, 4 N.J. Misc. 139, 143, 132 A. 221 (Sup.Ct.1926); Young v. Sterling Leather Works, 91 N.J.L. 289, 295, 102 A. 395 (E. & A.1917).
Recognizing the common law limited to the father the right to collect services and earnings of a minor child, the Legislature in 1953 enacted N.J.S.A. 9:1-1, entitled "Equal rights of parents to services and earnings of minor child; action for injuries to child," to eliminate the gender-based distinction and grant equal rights to a mother. In Mathias v. Luke, defendant claimed an excessive verdict in favor of the parents of a boy, age seven, resulting from injuries sustained when he was crossing the street. 37 N.J.Super. 241, 244-45, 117 A.2d 177 (App.Div.1955). In remanding the $5,000 damage award in favor of the boy's parents to permit the parents the opportunity to prove specific prospective pecuniary loss, we observed, given the status of the law, "that there was every prospect that this lad would be of materially less use and service to his parents until *189 majority or emancipation as a result of his disability...." Id. at 247, 117 A.2d 177.
In reaching her conclusion, here, the motion judge relied on Bandel v. Friedrich, 122 N.J. 235, 241, 584 A.2d 800 (1991), for the proposition that a claim for inability to care for oneself belongs to the disabled adult plaintiff and not to the parent for gratuitous services rendered. In Bandel, plaintiff, an adult, brought a malpractice action for a delayed diagnosis which resulted in post-operative complications that rendered plaintiff permanently disabled to the extent he required twenty-four hour care. Id. at 238, 584 A.2d 800. During the three plus years preceding trial, plaintiff's mother, Bessie Bandel, cared for him almost exclusively, receiving no compensation for her services. Ibid. The trial judge refused to instruct the jury that the reasonable value of the gratuitous services provided by plaintiff mother and required for his care were an element of damages recoverable by the mother. Id. at 238-39, 584 A.2d 800. In arriving at its conclusion that the collateral source rule did not prevent plaintiff from seeking damages equal to the reasonable value of the services gratuitously provided by his mother, the Supreme Court pointed out "we determine that the lost ability to care for oneself due to tortiously inflicted injury is an appropriate element of compensatory damages recoverable by an injured plaintiff from the responsible tortfeasor." Id. at 241, 584 A.2d 800. While the Supreme Court confirmed that the claim for inability to care for oneself belongs to the injured party, it was not faced with the issue before us: whether a parent can recover for lost consortium of an adult child.
Three published Law Division decisions have dealt with the question of parents' entitlement to per quod damages for injuries sustained by their children. In Brennan v. Biber, Judge Kole refused to expand recovery by a parent to include loss of a child's society and companionship, in addition to loss of earnings and services, there being "no authority in this State for allowing such recovery." 93 N.J.Super. 351, 369, 225 A.2d 742 (Law Div.1966), aff'd, 99 N.J.Super. 247, 239 A.2d 261 (App.Div.1968). A contrary result was reached in Davis v. Elizabeth Gen. Med. Ctr., by Judge Menza who observed that, based upon statutory enactment or analogy with a spouse's claim for consortium, the trend appears to allow a per quod claim for companionship and society in cases where a minor child has been seriously injured. 228 N.J.Super. 17, 20-21, 548 A.2d 528 (Law Div.1988). He concluded that such a claim was fair and reasonable and that there was no statutory provisions nor New Jersey precedent precluding such a claim. Id. at 23, 548 A.2d 528.
Recently in Mealey v. Marella, Judge Almeida found, under the circumstances of the case before him, that parents could maintain a claim for loss of companionship and society as a result of injuries sustained by their son, even though at the time of the accident he had reached his majority. 328 N.J.Super. 129, 137, 744 A.2d 1226 (Law Div.1999). William Mealey III was a passenger in an automobile which left the roadway rendering him a quadriplegic. Id. at 131-32, 744 A.2d 1226. At the time of the accident, Mealey was age eighteen and a high school student living at home. Before the accident, Mealey regularly assisted with household chores including caring for his grandparents and babysitting his brother's children. Id. at 132, 744 A.2d 1226. He often went camping with his family, went fishing, and attended sporting events with his father. Ibid. While acknowledging that "New Jersey presently recognizes that cause of action in cases involving injury to a minor child," and that "the theory does not extend to a parent's claim for the loss of companionship and society of an adult child," Judge Almeida determined that the limitation of recovery based upon an aged-based distinction is "no longer relevant to today's society." Id. at 135, 744 A.2d 1226.
*190 In reaching his conclusion, Judge Almeida placed heavy emphasis on the holding in Howard Frank, M.D., P.C. v. Superior Court of Ariz., 150 Ariz. 228, 722 P.2d 955 (1986). In Frank, parents of an adult child brought a loss of consortium action against a doctor, alleging negligent administration of anesthesia caused their child severe brain damage. The Arizona Supreme Court reasoned that the common-law basis for the development of the claim was the relegation of a child's role as servant to the father. Id. at 959. The element of damages at common law was the father's loss of services and wages resulting from injury to a minor child. The court observed that today the laws against child labor virtually guarantees "that children will not be an economic asset of their parents." Ibid. It pointed out that the emotional loss associated with loss of consortium has replaced the loss of services and earnings as the significant action in favor of parents. Ibid. The court recognized that age distinction is no longer justified, given the demise of the master-servant rationale which spawned the common law. Id. at 959-60. In reaching its conclusion to permit the cause of action, the Arizona Supreme Court also indicated that it did not "believe that increased litigation will be a problem because in the vast majority of cases involving injury to a child the injury will not be so severe that the parents suffer a loss of society and companionship." Id. at 960.
Comparing a claim for lost consortium of an adult child as a result of severe injuries with that permitted as a result of wrongful death, Judge Almeida quoted the following excerpt from Frank, supra:
"[N]o meaningful distinction can be drawn between death and severe injury where the effect on consortium is concerned. Often death is separated from severe injury by mere fortuity; ... Perhaps the loss of companionship and society experienced by the parents of a child permanently and severely injured... is in some ways even greater than that suffered by parents of a deceased child. Not only has the normal family relationship been destroyed, as when a child dies, but the parent also is confronted with his loss each time he is with his child and experiences again the child's diminished capacity to give comfort, society, and companionship."
[Mealey, supra, 328 N.J.Super. at 137, 744 A.2d 1226 (quoting Frank, supra, 722 P.2d at 957-58) (citation omitted).]
Likewise, the Supreme Court of Hawaii, in Masaki v. General Motors Corp., held that parents can maintain a cause of action for loss of consortium of an adult child who was severely and permanently injured as a result of the negligence of another. 71 Haw. 1, 780 P.2d 566, 576 (1989); see also Harbeson v. Parke-Davis, Inc., 98 Wash.2d 460, 656 P.2d 483, 494 (1983) (noting that damages for loss of filial consortium are not limited to the child's minority).
By contrast, the Supreme Court of Wisconsin in Estate of Wells v. Mount Sinai Med. Ctr., explained its reasons for following the majority view not allowing parents to recover consortium resulting from injuries sustained by an adult child:
There are several reasons why allowing recovery to the parents of minor children but not adult children is a rational response to the above-articulated public policy concerns. As compared to adult children, minors are significantly less likely to have spouses or children of their own. Thus, in most cases, a tortfeasor who injures a minor child will not also be liable to persons having such relationships to the victim.
In addition, the period of minority itself is limited, lasting just 18 years. Today, with increasing life expectancy, it is not uncommon that persons 60 or even 70 years of age may still have surviving parents. Extending the parents' cause of action to their adult children, therefore, will in many cases extend the parents' potential period of recovery by as much as 40 or 50 years.

*191 [183 Wis.2d 667, 515 N.W.2d 705, 710 (1994).]
See also Aurora v. Burlington N. R.R. Co., 31 F.3d 724, 726 (8th Cir.1994)(finding the mother's loss of consortium claim arising our of nonfatal injury to adult child was properly dismissed because Nebraska would not allow such claim); Counts v. Hospitality Employees, Inc., 518 N.W.2d 358, 361 (Iowa 1994) (finding that a parent could not recover for loss of consortium on account of dram shop injury to adult son); Schmeck v. City of Shawnee, 231 Kan. 588, 647 P.2d 1263, 1267 (1982)(denying parents of an adult child a consortium claim where the State does not recognize loss of consortium claim for injuries caused by the negligence of another); Michigan Sanitarium & Benevolent Ass'n v. Neal, 194 N.C. 401, 139 S.E. 841, 842 (1927)(holding that parent of adult son who became deranged could not recover for loss of consortium because the damages were too remote.); Cole v. Broomsticks, Inc., 107 Ohio App. 3d 573, 669 N.E.2d 253, 256 (1995), appeal dismissed, 75 Ohio St.3d 1474, 663 N.E.2d 1301, reconsideration denied, 75 Ohio St.3d 1513, 665 N.E.2d 682 (1996)(denying a parent of an adult child a loss of consortium cause of action because no such cause of action exists for a parent of an adult); Brower v. City of Philadelphia, 124 Pa.Cmwlth. 586, 557 A.2d 48, 51 (1989) (denying parents' claim for loss of adult child's filial consortium because Pennsylvania does not recognize cause of action for loss of companionship and society); Boucher v. Dixie Med. Ctr., 850 P.2d 1179, 1184-85 (Utah 1992) (finding that parents of tortiously injured adult child could not recover for loss of consortium in light of legislative abolition of spousal consortium cause of action).
Plaintiff argues that the dismissal of her legal malpractice claim based upon the lack of authority permitting a claim on her behalf for loss of consortium of an adult child was error because it is inconsistent with the holdings in Carey v. Lovett, 132 N.J. 44, 67, 622 A.2d 1279 (1993), and Green v. Bittner, 85 N.J. 1, 11-13, 424 A.2d 210 (1980). Both Carey and Green dealt with parents' claims for loss of society, companionship and services arising from the wrongful death of their child. In Green, the Supreme Court held that loss of services, society and companionship of a child qualify as pecuniary injuries under the wrongful death statute, regardless of age. Id. at 11, 424 A.2d 210. The Court indicated that "`the pecuniary injury designated by the statute is nothing more than a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased.'" Ibid. (quoting Cooper v. Shore Elec. Co., 63 N.J.L. 558, 567, 44 A. 633 (E. & A. 1899)). In reaching its conclusion that activities performed by a child, both as an infant and an adult, are recoverable as pecuniary injuries, the Court in Green, supra, observed:
The fact that parents are usually legally entitled to the services of their children until majority seems to have led us in New Jersey to the implicit conclusion that that is the limit of the parents' loss (other than prospective financial contributions). But continuing family relationships-uninterrupted by the death of a family member-encompass more than the exchange of physical chores around the house at various times during the family's history, and even more than direct financial contributions....
What services, what activities, could a daughter or son reasonably have been expected to engage in but for their death and to what extent do any of them have monetary value? Just as the law recognizes that a child may continue performing services after age 18, and that monetary contributions may also be received by the parents thereafter when the child becomes productive, it should similarly recognize that the child may, as many do, provide valuable companionship and care as the parents get older. As noted above, our courts have not hesitated to recognize the need of children for physical help and care. Parents facing age or deteriorating health have the same need, and it is usually their children who satisfy that need. Indeed *192 the loss of companionship and advice which a parent suffers when a child is killed will sometimes be as great as the loss of counsel and guidance which a child suffers when a parent is the victim.

[85 N.J. at 11-12, 424 A.2d 210.]
Likewise, in Carey, supra, the Supreme Court recognized that, in the context of a wrongful-death case, damages sustained by parents "may include the pecuniary value of the child's help with household chores, the pecuniary value of the child's anticipated financial contributions, and the pecuniary value of the child's companionship, including his or her advice and guidance, as the parents grow older." 132 N.J. at 67, 622 A.2d 1279 (citations omitted). While the language found in Green and Carey is supportive, the holdings are specifically limited to the fundamental rights established by the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and the extent to which a parent can recover consortium damages resulting in pecuniary loss which arise from the death of a minor child.
The continuation of the family relationship recognized in Green gives support to plaintiff's contention that age alone should not be the definitive factor in determining whether a parent can maintain a per quod claim encompassing lost services, companionship and society for severe injuries suffered by an adult child. The argument that a parent should be able to recover lost services of an adult unemancipated child, as well as future companionship and society, where the child is so severely injured by a tortfeasor that he or she is virtually totally disabled is compelling.
We are mindful of the moving and poignant circumstances confronting plaintiff, as well as other parents, who may find themselves in similar situations as the result of catastrophic injuries sustained by their unemancipated children, regardless of age. We are not unsympathetic to expanding the loss of consortium cause of action to include severely injured adult unemancipated children. However, notwithstanding the apparently devastating injuries sustained by Amy and the alleged magnitude of plaintiff's related consortium loss, we nevertheless affirm the motion judge's order dismissing plaintiff's malpractice claims. To do otherwise would establish a new cause of action beyond that which has been the common law of this State. An intermediate appellate court "should normally defer to the Supreme Court or to the Legislature with respect to the creation of a new cause of action." LoBiondo v. Schwartz, 323 N.J.Super. 391, 422, 733 A.2d 516 (App.Div.), certif. denied, 162 N.J. 488, 744 A.2d 1211 (1999) (citations omitted); see also Proske v. St. Barnabas Med. Ctr., 313 N.J.Super. 311, 316, 712 A.2d 1207 (App.Div.1998), certif. denied, 158 N.J. 685, 731 A.2d 45 (1999) (citations omitted); Passaic Township Bd. of Educ. v. Passaic Township Educ. Ass'n, 222 N.J.Super. 298, 303, 536 A.2d 1276 (App.Div.1987) (citations omitted); Coyle v. Englander's, 199 N.J.Super. 212, 219-20, 488 A.2d 1083 (App.Div.1985) (citations omitted).
We decline to adopt, thereby overruling, the holdings in Davis, supra, and Mealey, supra, to the extent that they extend a parent's right to seek per quod damages beyond that permitted by the common law.
Affirmed.