841 A.2d 948 (2004)
366 N.J. Super. 555
Janet McDONALD, individually and as Guardian ad Litem of Michael McDonald, an infant, Plaintiff-Appellant,
v.
LEDERLE LABORATORIES, a Division of American Cyanamid Corporation; American Cyanamid Corporation, a Subsidiary of American Home Products Corporation; and American Home Products Company, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 2004.
Decided February 18, 2004.
*950 Samuel M. Pollack (Hugo & Pollack) of the Massachusetts bar, admitted pro hac vice, argued the cause for appellant (Todd Brandon Eder and Mr. Pollack, attorneys; Mr. Eder, Mr. Pollack, and Michael R. Hugo, of counsel and on the brief).
Lauren E. Handler, Morristown, argued the cause for respondents (Porzio, Bromberg & Newman, attorneys; Ms. Handler and David C. Paige, of counsel and on the brief).
Before Judges KING, LINTNER and LISA.
*949 The opinion of the court was delivered by LINTNER, J.A.D.
Michael McDonald was born on April 13, 1989. Shortly after being inoculated, at the age of three months, with a vaccine against diphtheria, pertussis, and tetanus (DPT) manufactured by defendants, Michael allegedly manifested an adverse reaction, as a result of which he currently suffers from a seizure disorder, encephalopathy, mental retardation, and developmental delay. In McDonald v. Lederle Laboratories, 341 N.J.Super. 369, 775 A.2d 528 (App.Div.2001) (McDonald I), we affirmed the Law Division judge's dismissal of Janet McDonald's claim, as Guardian ad Litem, holding that Janet's failure to prosecute and file a timely petition under the National Vaccine Injury Compensation Act, 42 U.S.C.A. §§ 300aa-1 to -34 (the Act), precluded her from pursuing a subsequent state tort action on her son's behalf. Pointing out that the Act does not preclude parents from filing claims for their own losses, we reversed and remanded the dismissal of Janet's individual claims for medical expenses and loss of services, society, and companionship to afford the Law Division the opportunity to rule on the viability of those claims.
On remand, defendants' motion for summary judgment was granted, dismissing Janet's remaining claims. The Law Division judge found that: (1) all Janet's claims were derivative of Michael's and, therefore, could not stand alone; (2) Janet's past and future claims for medical bills were preempted by the Act; and (3) Janet's per quod claim for loss of society and companionship is not recognized in New Jersey.
We hold that Janet's only viable state per quod claim, her alleged loss of Michael's services, survives, notwithstanding its dependency on proof of liability for Michael's injuries because it is not cognizable under the Act. Accordingly, we reverse the order for summary judgment and remand for trial Janet's claim for loss of Michael's services. The order dismissing Janet's claims for loss of society and companionship, and Michael's past and future medical expenses is affirmed.
On appeal, Janet argues that her individual state per quod claims for medical expenses and loss of society, services, and companionship are not precluded by the Act and the statute of limitations on those claims is tolled by the application of N.J.S.A. 2A:14-2.1. Defendants concede that N.J.S.A. 2A:14-2.1 tolls the statute of limitations by staying Janet's claims for damages resulting from Michael's injuries during his minority. However, defendants counter, asserting that all of Janet's claims are derivative in nature and, therefore, cannot stand alone, given our previous holding in McDonald I invalidating her claim as guardian on behalf of Michael. They also argue that Janet's claims for medical expenses are the same as those previously brought on behalf of Michael and, therefore, preempted by the Act. Finally, defendants assert that we do not *951 recognize common law per quod claims for loss of society and companionship.
We consider first Janet's claims for Michael's medical expenses. The Law Division judge found that the Act preempted Janet's claims for medical expenses. Generally, the congressional or federal agency purpose is the touchstone for analyzing the applicability of preemption. There are several ways to prove preemption. First, "Congress explicitly may express its intent to preempt state law." Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 615, 725 A.2d 1104 (1999) (citing Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316, 325 (1988)). Second, "preemption may be inferred where the federal legislation is so comprehensive that it creates the inference that Congress intended to leave no room for state regulation in the area." Franklin Tower One, supra, 157 N.J. at 615-16, 725 A.2d 1104 (citing Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985)). Third, "[p]reemption also may be found where state law actually conflicts with federal law." Franklin Tower One, supra, 157 N.J. at 616, 725 A.2d 1104 (citing California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623 (1987)).
Conflict preemption occurs in two instances: where "`compliance with both federal and state regulations is a physical impossibility,' or where state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" R.F. v. Abbott Labs., 162 N.J. 596, 618, 745 A.2d 1174 (2000) (quoting Gade v. National Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L. Ed.2d 73, 84 (1992) (citations omitted)).
The Act established a National Vaccine Injury Compensation Program (the Program), which permits recovery of actual and projected "unreimbursable expenses" resulting "from the vaccine-related injury for which the petitioner seeks compensation" or which "have been or will be incurred by or on behalf of the person who suffered such injury" or "for diagnosis and medical or other remedial care determined to be reasonably necessary." 42 U.S.C.A. § 300aa-15.[1] The primary purpose of the Act is to keep manufacturers of vaccines in the market because "the costs related to tort insurance and defense of civil litigation `had begun to dwarf [manufacturers'] vaccine production revenues.'" McDonald I, supra, 341 N.J.Super. at 377, 775 A.2d 528 (quoting Schafer v. American Cyanamid Co., 20 F.3d 1, 4 (1st Cir.1994)). To encourage persons sustaining vaccine-related injuries to use and benefit from the Act's favorable provisions abrogating the traditional tort burden of proof, we observed:
It expressly warns that a victim's traditional tort claim will not be saved by a state statute of limitations that extends beyond the limitation period proscribed by the Act, if a claim is not filed with the Program within its time restrictions.... The preclusive application of the Act, which prevents plaintiff in her representative capacity from pursuing a civil action... is ... consistent with the stated purpose of avoiding the public harm that would result from either a loss or decline in the production of necessary vaccines. Simply put, Congress wants victims to first try the Program with the *952 expectation that its results will be accepted. Unless a petitioner is required to fully adjudicate a claim, pursuant to the Program's expedited procedures, Congress's objectives will not be realized.

[Id. at 379-80, 775 A.2d 528.]
The Program specifically provides for the recovery of medical expenses incurred by, or on behalf of, those sustaining vaccine-related injuries. To permit Janet to recover these same expenses in a subsequent state court claim where she has not properly pursued her federal Vaccine Court claim would undermine the stated purposes and objectives of the Act. Strauss v. American Home Prods. Corp., 208 F.Supp.2d 711, 715, n. 8 (S.D.Tex. 2002). Her failure to timely pursue medical expenses recoverable under the Act precludes her individual claim for the same damages. The motion judge correctly determined that, although recognized as a viable derivative state cause of action, Janet's claim for Michael's medical expenses was preempted.
We come to a different conclusion respecting Janet's other viable state cause of action. In Tynan v. Curzi, 332 N.J.Super. 267, 753 A.2d 187 (App.Div. 2000), we declined to extend our common law, which limits parents' per quod damages to loss of services, earnings, and medical expenditures from injuries to a minor child by permitting claims for loss of companionship and society. Observing that "[a]n intermediate appellate court `should normally defer to the Supreme Court or to the Legislature with respect to creation of a new cause of action,'" we recognized as "compelling" the argument that a parent should be able to recover damages for loss of companionship and society of a severely injured, disabled child. Id. at 277, 753 A.2d 187 (quoting LoBiondo v. Schwartz, 323 N.J.Super. 391, 422, 733 A.2d 516 (App.Div.) (citations omitted), certif. denied, 162 N.J. 488, 744 A.2d 1211 (1999)). We further noted that we were not "unsympathetic to expanding the loss of consortium cause of action to include severely injured adult unemancipated children." Id. at 277, 753 A.2d 187. Although the same concerns are apparent here, we, nevertheless, defer to the Supreme Court or the Legislature, and decline to extend Janet's common law per quod damages beyond those for loss of services, earnings, and medical expenditures. Because Janet's claim for medical expenses is preempted and Michael's age precludes consideration of damages for lost earnings, we limit our further discussion to Janet's per quod claim for loss of services, her only remaining claim.
Parents are not precluded from filing an individual civil action for losses incurred by them, which cannot be recovered under the Act. McDonald I, supra, 341 N.J.Super. at 380, 775 A.2d 528; Schafer, supra, 20 F.3d 1, 2 (1st Cir.1994); Cook v. Children's Med. Group, 756 So.2d 734, 743 (Miss.1999). We therefore turn our inquiry to the question as to whether Janet's claim for loss of Michael's services can stand alone or whether it is barred by our dismissal of Michael's primary claim. Defendants contend that Janet's per quod claim is incidental to, dependent on, and derivative of Michael's claim and therefore cannot survive alone. They argue that, where the underlying claim cannot be sustained, the derivative claim must also fail. Several cases have treated per quod claims as dependent on the claim of the injured person. See Patusco v. Prince Macaroni, Inc., 50 N.J. 365, 235 A.2d 465 (1967) (per quod claim of husband defeated by wife's contributory negligence); Rex v. Hutner, 26 N.J. 489, 140 A.2d 753 (1958) (husband's consortium claim of wife's loss of services and medical expenses must be commenced *953 within the same two-year limitation period as wife's claim); Tichenor v. Santillo, 218 N.J.Super. 165, 527 A.2d 78 (App.Div.1987) (per quod award reduced by percentage of negligence attributable to injured spouse).
Janet places heavy reliance on Orr v. Orr, 36 N.J. 236, 176 A.2d 241 (1961), in which the Court permitted a father to recover medical expenses and loss of services arising from injuries to his minor daughter for the period of time between the accident and the time the daughter married the defendant. At the time, the daughter was prevented from asserting her claim against the defendant based upon inter-spousal immunity. In reaching its holding, the Court stated:
While ordinarily the facts establishing initial liability of the defendant to the child must be proved in a parent's cause of action for consequential damages, application of the term `derivative' to such a cause of action does not thereby transform what is basically a separate cause of action into one which is dependent upon the continued existence of another.
[Id. at 239, 176 A.2d 241.]
In Fekete v. Schipler, 80 N.J.Super. 538, 194 A.2d 361 (App.Div.1963), we distinguished Orr, holding that a father's claim for medical expenses for his daughter's injuries sustained while riding a bicycle was barred by the child's contributory negligence. We observed:
All that the Supreme Court held in Orr was that the infant's subsequent marriage to the tortfeasor operated to bar only her own suit and did not affect her father's claim which, like her own, was initially valid and enforceable. The opinion therein, while holding that the father's claim was "basically a separate cause of action," recognized that ordinarily the facts establishing initial liability of the defendant to the child must be proved in a parent's cause of action for consequential damages. Where the infant is contributorily negligent there is no initial cause of action on behalf of the infant. The Orr decision is distinguishable on that basis.
[Id. at 540-41, 194 A.2d 361.]
We find the same distinction here. Initially, Janet's claim as guardian ad litem on behalf of Michael was valid and enforceable so long as she filed her petition and prosecuted her claim in accordance with the Act. More importantly, Janet's claim for consequential damages resulting from her loss of Michael's services is, like the claim in Orr, a separate cause of action, not recoverable under the Act, and, therefore, cognizable in state court regardless of the resulting adjudication in the Vaccine Court. It is not barred by the applicable state statute of limitations, nor has there been proof of contributory negligence or some other substantive defense on the merits. Janet concedes that she can only recover if liability for Michael's injuries is established against defendants. Janet's cause of action for loss of services is dependent only on proof that defendants manufactured a defective product, which proximately caused Michael's injuries. In all other respects, it is a separate, distinct, and viable claim. Under these circumstances, we see no reason justifying its preclusion.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
NOTES
[1] Medical expenses paid by Medicaid are also recoverable under the Act. 42 U.S.C.A. § 300aa-15(g)(1).